STATE of Iowa, Appellee,

v.

Brian Edward REYNOLDS, Appellant.

No. 02–0277.

Supreme Court of Iowa.

July 16, 2003.

Rehearing Denied Oct. 24, 2003.

Mark J. Neary, Muscatine, for appellant.

Thomas J. Miller, Attorney General, Darrel L. Mullins, Assistant Attorney General, Richard R. Phillips, County Attorney, and Dana Christensen, Assistant County Attorney, for appellee.

TERNUS, Justice.

The defendant, Brian Reynolds, was convicted of second-degree harassment and tampering with a juror after he stalked a juror who had served in his prior prosecution on a misdemeanor charge. *See* Iowa Code § 708.7(1)(*b*) (2001) (harassment); *id.* § 720.4 (tampering with a juror). He now appeals, claiming there was insufficient evidence to support the jury's finding of personal contact of a harassing nature, a required element in both crimes. He also contends the trial court failed to ensure that he made a knowing and voluntary waiver of his Fifth Amendment trial rights because the court did not question the defendant on the record with respect to his decision not to testify. *See* U.S. Const. amend. V. Finally, Reynolds alleges the ineffectiveness of his trial counsel, contending counsel should have objected to the victim's testimony concerning (1) her fear of the defendant and possible physical harm to her and her family, and (2) Reynolds' operation of a motor vehicle when he was not supposed to be driving. We affirm.

## I. *Background Facts and Proceedings.*

The present case had its origins in Reynolds' earlier prosecution on a traffic offense. On November 7, 2001, a jury found Reynolds guilty of a driving-related misdemeanor charge. Tracy Cottrell was a member of the jury that convicted Reynolds. She was not acquainted with him prior to the trial.

After completing her jury service around noon on November 7, Cottrell began her drive home. She lived in a mobile home park several miles from the courthouse and traveled a route that included several short cuts requiring numerous turns. On the way she noticed an unfamiliar black SUV following her, which caused her to feel "a little scared because [she] was all alone." The SUV had tinted windows, so Cottrell could not see the vehicle's occupants.

When Cottrell reached the mobile home park, she stopped at her mailbox along the road to pick up her mail and did not see the SUV. She then proceeded to her trailer, making several turns to reach it. Cottrell entered her home; the black SUV was not in sight. About twenty minutes later, however, she saw the same vehicle driving past her trailer at a very slow speed. The SUV drove by her home three times in this manner. Cottrell was still unable to see who was in the vehicle, but she became "really scared" and told her fifteen-year-old daughter that someone had followed her home.

Later, Cottrell left her home to travel to a nearby Casey's to buy shampoo. She passed a clearing between the trailer park and Casey's and noticed the black SUV parked there. She "got a little scared," but continued to the store. The SUV remained in the clearing, so she parked, got out of her car, and went inside.

Shortly after entering Casey's, Cottrell noticed the black SUV pull up to the store and park in a no-parking space. As she approached the checkout counter, she saw Reynolds get out of the SUV and enter the store alone. Cottrell recognized him immediately as the defendant in the trial held earlier that day. At this point, she was very frightened. Cottrell saw Reynolds get something to drink and then get in line behind her. He said, "You thought I was guilty, huh?" Shaken, she responded that she was not allowed to talk about the trial. She paid for her purchases and headed for the door. As she left, the defendant said, "[n]o hard feelings," in a "kind of snotty way." Cottrell did not take this statement "as a good thing." Nonetheless, she testified at trial that these words alone were not threatening to her, but the fact that the defendant had followed her and knew where she lived frightened her.

Upon returning home, Cottrell called the sheriff. The deputy who arrived a short time later found her visibly upset over the incident. After talking with Cottrell, the deputy located Reynolds at his residence. When questioned by the officer, Reynolds said he had parked his car to do some job-related paperwork and then had stopped in at Casey's.

The county attorney charged Reynolds with harassment in the second degree in violation of Iowa Code section 708.7(1)(*b*), and tampering with a juror in violation of Iowa Code section 720.4. The State's witnesses testified to the sequence of events recited above. After unsuccessfully moving for a directed verdict of acquittal based on an alleged insufficiency in the evidence, the defendant rested without presenting any testimony. The jury returned a guilty verdict on both charges.

The defendant filed a motion for new trial, claiming his trial counsel was ineffective because he prevented Reynolds from testifying at the trial. He also alleged the trial court should have made a record on the defendant's waiver of his right to testify. Reynolds was allowed to address the court on this matter. He asserted that he had wanted to testify and that he had wanted his counsel to call witnesses on his behalf, particularly his mother. The trial court overruled the defendant's motion for new trial, suggesting these matters were more appropriate for a postconviction relief action. At the defendant's request, the court merged the harassment conviction into the tampering-with-a-juror conviction, sentenced Reynolds to 360 days in the county jail, and imposed a $500 fine.

Reynolds challenges his conviction on three grounds. First, he claims the trial court erred in failing to grant his motion for judgment of acquittal based upon the insufficiency of the evidence showing personal contact of a harassing nature. Second, he challenges the validity of his decision not to testify, contending the court should have addressed him personally with respect to this matter. He claims his trial counsel was ineffective in failing to raise this issue and/or the court erred in failing to sua sponte make inquiry concerning Reynolds' decision not to testify. Finally, the defendant claims his attorney rendered ineffective assistance when he failed to object to certain testimony by the victim. We will address each issue separately.

## II. *Sufficiency of the Evidence Showing "Personal Contact."*

 A. *Scope of review.* We review the trial court's decision that the evidence was sufficient to support submission of the charges to the jury for correction of errors of law. *State v. Walker,* 574 N.W.2d 280, 284 (Iowa 1998). If there is substantial evidence in the record to support a finding of the challenged element, the trial court's denial of a defendant's motion for judg-

ment of acquittal is proper. *State v. Bayles*, 551 N.W.2d 600, 608 (Iowa 1996). "Evidence is substantial if it could convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *Id.*

B. *Discussion.* Reynolds contests the sufficiency of the evidence on the element of personal contact of a harassing nature. This element was common to the harassment charge and the tampering-with-a-juror charge. Iowa Code section 708.7(1)(*b*) states: "A person commits harassment when the person, purposefully and without legitimate purpose, has *personal contact with another person with the intent to threaten, intimidate, or alarm that other person.*" Iowa Code § 708.7(1)(*b*) (emphasis added). A person is guilty of tampering with a juror when that person "in retaliation for anything lawfully done by any . . . juror in any case, *harasses* such . . . juror." *Id.* § 720.4 (emphasis added).

"Personal contact" is defined in section 708.7(1)(*b*) to mean "an encounter in which two or more people are in visual or physical proximity to each other." *Id.* § 708.7(1)(*b*). The statute specifically provides that " '[p]ersonal contact' does not require physical touching or oral communication although it may include these types of activities." *Id.* The defendant claims the only "personal contact" that occurred here was in the convenience store and that contact does not constitute harassment because the victim testified this incident alone was not threatening to her. Reynolds argues the encounters that were alarming to Cottrell—his trailing of her in his SUV—did not constitute personal contact because Cottrell did not know who was following her.

We reject this argument. The statute merely requires visual or physical proximity; it does not require that the victim recognize the offender or know the identity of the person harassing her. In fact, it does not even require that the victim actually feel threatened, intimidated, or alarmed, only that the defendant act with the intent to cause such a reaction. Thus, the fact that Cottrell was not alarmed by her conversation with Reynolds in the convenience store does not mean that conduct could not qualify as harassment. Reynolds was admittedly in physical and visual proximity to Cottrell in Casey's and if the jury believed he made that contact with an intent to threaten, intimidate or alarm Cottrell, he has violated the statute even though his attempts to frighten her were not successful. *Cf. State v. Button*, 622 N.W.2d 480, 484 (Iowa 2001) (holding defendant could be guilty of harassment if conduct was intended to threaten the victim even though the defendant was not capable of carrying out his threats when he made them).

Even if we ignore the defendant's interaction with the victim at Casey's, there is still substantial evidence to support the jury's finding of personal contact. The closeness of the defendant's vehicle to the victim's car and home satisfies the physical proximity alternative of the personal contact requirement. *Cf. State v. Limbrecht*, 600 N.W.2d 316, 319 (Iowa 1999) (holding defendant's acts in driving by the victim's home satisfied "physical proximity" requirement of Iowa's stalking statute, Iowa Code section 708.11(2)). So long as the defendant's physical proximity to Cottrell was intended by him to threaten, intimidate, or alarm her, the necessary personal contact has occurred. The victim's identification of the defendant as the culprit is not a necessary component of personal contact or physical proximity. Based on the adequacy of the evidence showing personal contact, we conclude the

trial court did not err in refusing to direct a judgment of acquittal.

### III. *Waiver of Right to Testify.*

 A. *Contentions and scope of review.* The defendant asserts the trial court had an obligation to determine on the record that he had knowingly and voluntarily relinquished his right to testify at trial. Reynolds claims the trial court erred in failing to conduct such an inquiry sua sponte. We review this claim de novo. *See State v. Griffin,* 576 N.W.2d 594, 596 (Iowa 1998).

 Because Reynolds' defense attorney did not raise this issue at trial, the defendant makes the related argument that trial counsel was ineffective in failing to require the court to make an inquiry of the defendant concerning his decision not to testify. We review this claim de novo also. *State v. Westeen,* 591 N.W.2d 203, 207 (Iowa 1999). To prevail on his ineffective-assistance-of-counsel claim, Reynolds must show that (1) counsel failed to perform an essential duty, and (2) prejudice resulted from this omission. *State v. Greene,* 592 N.W.2d 24, 29 (Iowa 1999). The defendant must prove both elements by a preponderance of the evidence. *Ledezma v. State,* 626 N.W.2d 134, 141–42, 145 (Iowa 2001).

 Generally, ineffective-assistance claims are preserved for postconviction relief proceedings to afford the defendant an evidentiary hearing and thereby permit the development of a more complete record. *State v. Bumpus,* 459 N.W.2d 619, 627 (Iowa 1990). This court will, however, consider such claims on direct appeal where the record is adequate to determine as a matter of law that the defendant will be unable to establish one or both of the elements of his ineffective-assistance claim. *State v. Williams,* 341 N.W.2d 748, 752 (Iowa 1983). Under such

circumstances, we affirm the defendant's conviction without preserving the ineffective-assistance-of-counsel claims. *See State v. Horness,* 600 N.W.2d 294, 297–98 (Iowa 1999).

The present appeal presents such a situation. Because we determine the trial court had no duty to address the defendant personally concerning his decision not to testify, no additional record is necessary to conclude as a matter of law that trial counsel was not ineffective for failing to raise this meritless issue. *See Greene,* 592 N.W.2d at 29 (stating counsel does not render ineffective assistance by failing to pursue a meritless issue).

 B. *Discussion.* Although criminal defendants were disqualified from testifying at common law due to their interest in the outcome of the trial, an accused's privilege to testify is now recognized as a constitutional right. *Rock v. Arkansas,* 483 U.S. 44, 49–53, 107 S.Ct. 2704, 2708–10, 97 L.Ed.2d 37, 44–47 (1987). Like other constitutional rights, the right to testify may be waived if done so "voluntarily, knowingly, and intelligently." *Ledezma,* 626 N.W.2d at 146. Although trial strategy plays a large role in whether a defendant testifies, *see State v. Polly,* 657 N.W.2d 462, 468 (Iowa 2003), the decision is for the defendant—not defense counsel—to make. *Ledezma,* 626 N.W.2d at 146. Trial counsel's role is simply to provide advice to the defendant to enable the accused to make a well-informed decision. *Id.*

Under the current state of Iowa law, the trial court has no duty to determine on the record that the defendant has made a voluntary, knowing, and intelligent waiver of the right to testify at trial. *Schertz v. State,* 380 N.W.2d 404, 415 (Iowa 1985). The defendant asks us to reconsider our decision in *Schertz* in light of authority

from other jurisdictions that requires the trial court to make a specific inquiry of the defendant regarding his decision not to testify. *E.g., LaVigne v. State,* 812 P.2d 217, 222 (Alaska 1991); *People v. Curtis,* 681 P.2d 504, 512 (Colo.1984), *limited by Roelker v. People,* 804 P.2d 1336, 1338–39 (Colo.1991); *Tachibana v. State,* 79 Hawai'i 226, 900 P.2d 1293, 1303 (1995); *State v. Neuman,* 179 W.Va. 580, 371 S.E.2d 77, 81 (1988).

Courts that have concluded a judicial inquiry is necessary in all cases do so on the rationale that the right to testify is so fundamental to a fair trial that a waiver of that right must be examined by the court to ensure that the *defendant* has voluntarily and knowingly relinquished the opportunity to take the stand in his own defense. *E.g., Curtis,* 681 P.2d at 511–12; *Neuman,* 371 S.E.2d at 81. Nonetheless, these courts have not found the requirement of an on-the-record colloquy to be of constitutional dimension. *See Hurn v. State,* 872 P.2d 189, 198–99 (Alaska Ct.App.1994); *Curtis,* 681 P.2d at 517.

In *Schertz,* this court refused to impose a requirement that the court personally address a defendant to ensure a valid waiver of the right to testify because we considered the decision whether to testify to be one of trial strategy, a matter in which the trial court should not be involved, and one "better left to the criminal defendant and his or her counsel." 380 N.W.2d at 415. Our holding in *Schertz* remains the rule in the majority of jurisdictions that have considered this issue. *See* Michele C. Kaminski, *Requirement That Court Advise Accused of, and Make Inquiry With Respect to, Waiver of Right to Testify,* 72 A.L.R.5th 403, 447–50 (1999) [hereinafter "Annotation"]; *see also United States v. Ortiz,* 82 F.3d 1066, 1069–70 & n. 8 (D.C.Cir.1996) (citing cases). The Appellate Court of Illinois has aptly summa-

rized the rationale for not requiring an on-the-record inquiry by the court:

There are several reasons why a trial judge is not required to inform a defendant of his right to testify. First, a defendant's decision as to whether or not to testify is often made as the trial unfolds. By advising a defendant of his right *to* testify, a court could influence the defendant to waive his right *not* to testify, "thus threatening the exercise of this other, converse, constitutionally explicit and more fragile right."

Second, a court could intrude upon the attorney-client relationship by advising a defendant of his right to testify. "A trial judge must take great care not to assume the functions of trial counsel." It is primarily the responsibility of defense counsel, not the trial judge, to advise a defendant as to whether or not he should testify and to explain the tactical advantages and disadvantages of each option. If a trial judge were to advise a defendant, *sua sponte,* of his right to testify, such an act could frustrate a decision on the matter made by the defendant and defense counsel who are designing trial strategy.

Finally, a trial judge is not required to inform a defendant of his right to testify because it is difficult for a judge to determine the appropriate time that he should advise a defendant concerning his right to testify, since "the judge cannot know that a defendant has not testified until the defense rests and such a moment is not an opportune time to engage in a discussion with defendant which might lead to a rupture with defense counsel ... or might undo a trial strategy based on the defendant's not testifying."

*People v. Shelton,* 252 Ill.App.3d 193, 191 Ill.Dec. 827, 624 N.E.2d 1205, 1211 (1993) (citations omitted); *see also Ortiz,* 82 F.3d

at 1070 (stating "defense counsel, not the court, has the primary responsibility for advising the defendant of his right to testify and for explaining the tactical implications of doing so or not"); Annotation, 72 A.L.R.5th § 12, at 450–55 (noting courts' reluctance to require an on-the-record inquiry is based in part on fear that judges would become enmeshed in decisions involving trial strategy). *See generally Ledezma,* 626 N.W.2d at 147 ("Generally, the advice provided by counsel [as to whether the defendant should testify] is a matter of trial strategy . . . .").

We agree with the wisdom of this analysis and decline the defendant's invitation to retreat from our holding in *Schertz.* We take no position, however, on whether an in-court colloquy with the defendant might be warranted under circumstances not present here or in *Schertz. See, e.g., United States v. Pennycooke,* 65 F.3d 9, 12–13 (3d Cir.1995) (suggesting colloquy may be required where it becomes apparent there is some disagreement between the defendant and his attorney over whether the defendant should testify); *United States v. Thompson,* 944 F.2d 1331, 1345 (7th Cir. 1991) (refusing to mandate an inquiry by the court unless there was some indication that the defendant's desire to testify was being thwarted by counsel); *Winkelman v. State,* 498 N.E.2d 99, 101 (Ind.Ct.App. 1986) (holding trial court had an obligation to explain to pro se defendants that they had a right to testify). We simply hold under the facts of this case that the trial court had no obligation to sua sponte confirm on the record that the defendant had knowingly and voluntarily waived his constitutional right to testify. Because the court had no duty to conduct such an inquiry, we conclude Reynolds' attorney was not ineffective in failing to demand that the court do so.

## IV. *Counsel's Failure to Object to Victim's Testimony.*

**A.** *Testimony at issue.* The defendant's final argument on appeal is that his counsel was ineffective in failing to object to two statements made by the victim at trial. During Cottrell's testimony about her conversation with Reynolds in the convenience store, she was asked what her state of mind was at that point. She responded:

> I wanted to get home so I could call the Sheriff, because I was really scared, you know. I mean, now he knows where I live. I got three kids at home, you know? What if he comes-this is like a movie, what if he comes and tries to kill me or something.

Later, when Cottrell was explaining to the jury what happened after Reynolds spoke to her, she testified:

> When I was leaving the store, walking to my car, I noticed that once again he was all by himself and he hopped in the driver's seat, driving, and I thought to myself—didn't he—didn't I just do the trial for him? He's not supposed to be driving and he's driving anyways. So, I was just thinking to myself, why would he drive right after he just got out of court?

The defendant claims his attorney should have objected to both statements. With respect to the first statement, Reynolds claims it was not relevant to any issue in the case. Even if relevant, asserts the defendant, any relevancy was outweighed by the unfair prejudice generated by the statement. With respect to Cottrell's testimony concerning the defendant's driving when he was "not supposed to be driving," Reynolds claims this information was inadmissible evidence of prior bad acts. He asserts its relevancy, if any, was outweighed by its prejudicial nature.

B. *Scope of review.* We review ineffective-assistance-of-counsel claims de novo. *Westeen,* 591 N.W.2d at 207. The principles governing such claims and our consideration of them have been set out above and will not be repeated here.

C. *Applicable evidentiary rules.* Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401. Although relevant evidence is generally admissible, *see id.* 5.402, it may be excluded where "its probative value is substantially outweighed by the danger of unfair prejudice," *id.* 5.403.

Evidence of other wrongs or acts may not be used "to prove the character of a person in order to show that he acted in conformity" with such other acts. *Id.* 5.404(*b*). This type of evidence is admissible, however, if relevant to another issue in the case. *Id.* Thus, rule 5.404(*b*) only "excludes evidence that serves *no purpose* except to show the defendant is a bad person, from which the jury is likely to infer he or she committed the crime in question." *State v. Rodriquez,* 636 N.W.2d 234, 239 (Iowa 2001) (emphasis added); *accord State v. Barrett,* 401 N.W.2d 184, 187 (Iowa 1987).

Of course, relevant evidence that shows a defendant's bad character might still be excluded under the balancing analysis required by rule 5.403. *Rodriquez,* 636 N.W.2d at 239–40. Rule 5.403 requires the trial court to weigh the probative value of relevant evidence against the danger of unfair prejudice. Iowa R. Evid. 5.403. The probative value of evidence is measured by its tendency to make a material fact more or less probable. *State v. Plaster,* 424 N.W.2d 226, 231 (Iowa 1988). Unfairly prejudicial evidence is evidence that

"appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action [that] may cause a jury to base its decision on something other than the established propositions in the case."

*Id.* (quoting 1 Jack B. Weinstein et al., *Weinstein's Evidence* ¶ 403[03], at 403–33 to 403–40 (1986) (now found at 2 Joseph M. McLaughlin, *Weinstein's Federal Evidence* § 403.04[1][c], at 403–40 to 403–44 (2d ed. 2001))).

D. *Discussion of state-of-mind testimony.* As noted, Reynolds claims evidence of Cottrell's fear was irrelevant. The State argues that the victim's testimony showed the defendant's actions caused her to be alarmed, a fact relevant to the issue of whether Reynolds acted with an "intent to threaten, intimidate, or alarm" another person. The State reasons that if a person is in fact alarmed by a defendant's conduct, that fact tends to show the defendant's intent to cause that effect.

We agree the victim's reaction to the defendant's behavior is relevant, but perhaps in a slightly more indirect way. Whether a particular victim was actually alarmed by a defendant's conduct is probative of whether such a reaction is a natural consequence of that type of conduct. The fact the victim's alarm is a typical response to such conduct tends to establish that a person acting as the defendant did should expect such a result. It follows that when a defendant acts in a manner that the defendant should expect would alarm another person, a fact finder could infer from this circumstance that the defendant intended to cause alarm. *See State v. Chang,* 587 N.W.2d 459, 462 (Iowa 1998) (holding jury may presume an actor intends the natural consequences of his or her act). Thus, we think Cottrell's actual

alarm was probative of Reynold's intent to alarm her. Accordingly, any objection by trial counsel to the admission of this testimony on the basis of relevancy would not have been successful. Therefore, counsel did not render ineffective assistance in failing to make this objection.

Reynolds also claims defense counsel should have requested exclusion of this evidence on the basis of unfair prejudice. Even if we assume a trial court would have properly excluded Cottrell's testimony on this basis, we do not think Reynolds can establish the prejudice element of his ineffective-assistance-of-counsel claim. In order to prove prejudice as a component of an ineffective-assistance claim, a defendant must show that "the outcome of the proceeding would have been different." *Horness*, 600 N.W.2d at 300–01; *accord State v. Lambert*, 612 N.W.2d 810, 814 (Iowa 2000) (stating "there must be a reasonable probability that, but for counsel's error, the trial result would have been different").

Reynolds argues Cottrell's expression of her fears was highly prejudicial because a juror would think he might have killed or harmed Cottrell. We think the defendant has exaggerated the effect of the victim's statements. Cottrell testified repeatedly that she was scared by the black SUV following her. Her fear reached a peak when she discovered that the driver of the vehicle was the defendant. Her testimony describing the extent of her alarm was only that—an expression of her fright. Considered in context, we do not think the jury would interpret it as an accusation by or belief of the victim that the defendant had actually come to kill her. Moreover, Cottrell mentioned a fear of Reynolds trying to kill her only once and this testimony was not emphasized or discussed by the prosecution. Given the relative insignificance of this testimony, we· conclude the

defendant cannot establish there is a reasonable probability that the exclusion of this evidence would have resulted in acquittal. Therefore, his ineffective-assistance-of-counsel claim based on his attorney's failure to object to this testimony fails as a matter of law.

E. *Discussion of other-bad-acts testimony.* Reynolds also criticizes his attorney for failing to object to Cottrell's testimony that she wondered why the defendant was operating a vehicle when he was not supposed to drive. He claims this evidence was irrelevant to any material issue and it was unfairly prejudicial because it implied that he was "a bad person who breaks the law," making the jury more likely to convict him based on his character rather than on the basis of any criminal act.

We reach the same conclusion with respect to this testimony as we did with respect to the victim's testimony concerning her fear of the defendant: as a matter of law, there is no prejudice of a magnitude sufficient to support a claim for ineffective assistance of counsel. Cottrell's indirect reference to the defendant's illegal driving was isolated and it was not emphasized by counsel for either party. The jury already knew that Reynolds had been convicted of a driving offense as that prosecution was the event precipitating the offenses charged in the present case. In addition, even if the jury thought the defendant was driving while barred or revoked, this act is a simple misdemeanor, *see* Iowa Code §§ 321.174A, .218, hardly the type of conduct likely to arouse a sense of horror or to provoke an instinct to punish. We simply do not think a reasonable fact finder would conclude that the outcome of this proceeding would have been different if this testimony had been excluded. Therefore, we hold as a matter of law that the defendant cannot prevail on

his ineffective-assistance claim based on counsel's failure to object to this testimony.

## V. *Summary and Disposition.*

The evidence was sufficient to support a finding that the defendant's actions constituted personal contact of a harassing nature. Therefore, the trial court did not err in denying the defendant's motion for judgment of acquittal.

In addition, the trial court did not err in failing sua sponte to question the defendant concerning the defendant's waiver of his right to testify. An on-the-record colloquy was not required under the circumstances of this case. For the same reason, defense counsel did not perform deficiently by failing to request that the court conduct such an inquiry.

The defendant's ineffective-assistance claims based on trial counsel's failure to object to certain testimony of the victim are likewise without merit. As a matter of law the defendant cannot establish that the outcome of his prosecution would probably have been different had this evidence been excluded. Therefore, he cannot show prejudice. Accordingly, we affirm his conviction without preserving his ineffective-assistance-of-counsel claims.

**AFFIRMED.**