# IN THE COURT OF APPEALS OF IOWA

No. 14-1006
Filed April 22, 2015

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**CURTIS HANSEN,**
　　Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Jeffrey L. Harris, District Associate Judge.

A defendant appeals the judgment and sentence entered following his conviction of invasion of privacy. **AFFIRMED.**

D. Raymond Walton of Beecher Law Offices, Waterloo, for appellant.

Thomas J. Miller, Attorney General, Heather Ann Mapes, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Emily Zerkel, Assistant County Attorney, for appellee.

Considered by Vaitheswaran, P.J., Mullins, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**SCOTT, S.J.**

Curtis Hansen appeals from the judgment and sentence entered following his conviction of invasion of privacy, in violation of Iowa Code section 709.21 (2013). He raises three claims on appeal. First, Hansen contends the evidence does not support the finding of guilty. Next, he contends the court impermissibly considered his right to exercise his Fifth Amendment right. Finally, he contends the court abused its discretion in denying him a deferred judgment. Because Hansen has failed to prove his contentions, we affirm.

**I. BACKGROUND FACTS AND PROCEEDINGS.**

In December of 2013, Hansen went to the Cedar Falls tanning salon he had been frequenting once or twice per week and asked to tan for twelve minutes. Hansen was directed to one tanning room, and another customer, Sadie Roberts, was given the adjoining room. There was a gap of approximately two inches at the bottom of the wooden wall separating the two rooms.

After entering his room, Hansen became aware that another person was using the adjoining room. He squatted down "like a catcher" and held his cell phone up to the gap at the bottom of the wall with the camera mode engaged. Roberts, who was undressed and applying tanning oil at the time, saw the camera beneath the wall and told Hansen to stop taking her picture, at which time Hansen withdrew the phone from the wall. Roberts immediately dressed and headed to the reception area to report the incident to an employee, who called law enforcement.

Officer Gavin Carman interviewed Hansen about the incident. In his interview at the scene, Hansen repeatedly denied he had placed his cell phone

under the wall or attempted to view Roberts. Later, in an interview at the police station, Hansen admitted he held his phone under the wall while the camera mode was engaged, stating he was using the camera lens to help him peek under the wall. He denied taking a picture or video with his phone, and there was no evidence any pictures or video was taken.

Hansen was charged with one count of invasion of privacy, to which he pled not guilty. He waived his right to a jury trial and was found guilty as charged at the close of the April 2014 bench trial. After denying his motions in arrest of judgment and for judgment notwithstanding the verdict, the district court sentenced him to ninety days in jail with all but two days suspended, plus a fine, criminal surcharge, and court costs. The court also ordered Hansen to register as a sex offender pursuant to Iowa Code chapter 692A.

## II. SUFFICIENCY OF THE EVIDENCE.

Hansen first contends there is insufficient evidence to support the court's verdict. We review his claim for a correction of errors at law. *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). In doing so, we review all the evidence in the record "in the light most favorable to the State, including all reasonable efforts that may be fairly drawn from the evidence." *Id.* (internal quotation marks omitted). If the evidence is sufficient to convince a rational factfinder that the defendant is guilty beyond a reasonable doubt, substantial evidence supports the verdict, and we uphold it. *Id.*

The crime of invasion of privacy occurs when a person "knowingly views, photographs, or films another person, for the purpose of arousing or gratifying the sexual desire of any person" if all of the following apply:

   a. The other person does not have knowledge about and does not consent or is unable to consent to being viewed, photographed, or filmed.
   b. The other person is in a state of full or partial nudity.
   c. The other person has a reasonable expectation of privacy while in a state of full or partial nudity.

Iowa Code § 709.21(1).

Hansen's argument focuses on the State's proof he viewed, photographed, or filmed Roberts. It is undisputed that no photos or video recordings of Roberts were found on Hansen's phone. While Hansen admitted he attempted to view Roberts, he argues the circumstantial evidence in the record is insufficient to support an inference he succeeded in viewing her. He claims the small size of the gap between the rooms, the use of a cell phone, and the short duration during which the phone was positioned beneath the wall militate against a finding he viewed Roberts.

When viewed in the light most favorable to the State, the evidence supports the finding Hansen viewed Roberts. During his interview with Officer Carman at the scene, Hansen adamantly denied that he had attempted to view Roberts. However, he changed his story during his interview at the police station, admitting he placed his phone under the wall while the camera mode was engaged. Hansen told Officer Carman he did not intend to take any pictures but admits he used his phone's camera for "peeking . . . like just peeking in somebody's window." Additionally, Roberts testified she was bent over with her back to the wall for between three and five seconds before she turned around and saw the phone, which was already in position beneath the wall. The phone was between two and two-and-one-half feet away from her at the time,

positioned at an upward angle with its lens visible to Roberts, and pointed in the direction of her body.

Because the evidence shows Hansen viewed Roberts, we affirm Hansen's conviction of invasion of privacy.

### III. FIFTH AMENDMENT CLAIM.

Hansen also contends the court impermissibly considered his exercise of his Fifth Amendment right against self-incrimination. As with all constitutional claims, we review this claim de novo. *State v. Washington*, 832 N.W.2d 650, 655 (Iowa 2013).

Hansen's argument focuses on the court's colloquy regarding his decision to waive his right to testify at trial. After establishing Hansen made the decision to not testify after discussing it with counsel, the court asked, "And you're aware of the consequences?" When Hansen answered affirmatively, the court added, "We won't have your version of events," to which Hansen replied, "Yes." Hansen argues this exchange shows the court improperly considered his exercise of his right to remain silent.

The United States Constitution protects the right of criminal defendants to testify in their own defense. *Rock v. Arkansas*, 483 U.S. 44, 49-53 (1987). The right to testify is a necessary corollary to the Fifth Amendment's guarantee against compelled testimony. *Id.* at 53. "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Harris v. New York*, 401 U.S. 222, 225 (1971). These rights may be waived so long as that waiver is voluntary, knowing, and intelligent. *State v. Reynolds*, 670 N.W.2d 405, 411 (Iowa 2003). To ensure the decision to not testify is voluntary, knowing, and intelligent, other

jurisdictions require the trial court to make specific inquiry of a defendant regarding the decision to not testify. *Id.* However, Iowa law requires no such inquiry. *Id.* at 411-12. While our supreme court has noted several reasons to not require an on-the-record inquiry about the waiver of the right to testify, it has not held an in-court colloquy is improper. *See id.* at 412-13 (listing three reasons that weigh against requiring a colloquy before stating it "took no position . . . on whether an in-court colloquy with the defendant might be warranted under circumstances not presented here or in *Shertz*").

There is no indication in the record the trial court considered Hansen's decision to not testify at trial in its determination. The order finding Hansen guilty does not reference Hansen's silence at trial. The statement the court made during the colloquy about a consequence of not testifying refers to Hansen losing the ability to present his version of events. There is nothing to suggest the court interpreted Hansen's silence on this issue to be an indication of his guilt. Accordingly, we find no error.

## IV. SENTENCE.

Finally, Hansen contends the court abused its discretion in sentencing by denying him a deferred judgment. He points to his lack of criminal record as a reason he should have been granted a deferred judgment.

We review sentencing decisions for an abuse of discretion. *State v. Thompson*, 856 N.W.2d 915, 918 (Iowa 2014). The district court abuses its discretion when it exercises its discretion on grounds or for reasons that were clearly untenable or unreasonable. *Id.* "When a ground or reason is based on

an erroneous application of the law or not supported by substantial evidence, it is untenable." *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014).

In sentencing Hansen, the court noted his age and lack of criminal record, his supportive family and circle of friends, the nature of the crime, the likelihood Hansen could be rehabilitated, the need to punish Hansen for the crime, the effect Hansen's sentence would have on deterring others, and the effect the crime had on the victim. The factors the sentencing court enumerated were proper factors to consider, and the punishment was legally permissible. Considering the record before us, we find the court acted within its discretion in sentencing Hansen.

**AFFIRMED.**