# IN THE COURT OF APPEALS OF IOWA

No. 24-0427
Filed March 5, 2025

**DAVID EDWARD WILLIAMS,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Chickasaw County, Laura Parrish,

Judge.

The applicant appeals the denial of his postconviction relief application.

**AFFIRMED**.

Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant.

Brenna Bird, Attorney General, and Katherine Wenman, Assistant Attorney

General, for appellee State.

Considered by Greer, P.J., and Buller and Langholz, JJ.

**GREER, Presiding Judge.**

David Williams Sr. was charged with first-degree sexual abuse, third-degree sexual abuse, and incest after a member of his family who was a minor, R.W, alleged he had abused her on thirteen to fifteen occasions. A jury convicted him on all three counts. After filing a direct appeal, which this court found meritless, Williams filed an application for postconviction relief (PCR) alleging four claims of ineffective assistance of counsel and an actual innocence challenge.[1] After a trial, the district court denied his application on the merits and dismissed his application. Williams appeals, alleging his trial counsel was ineffective for failure to present a defense.

Following our review, we conclude the bulk of Williams's ineffective-assistance claims relate to trial counsel's reasonable trial strategy over which witnesses to call. And as to his other challenge over whether other witnesses with general observations should have testified, we determine Williams failed to show prejudice. Finally, on his claim that he should have testified in his own defense, Williams failed to establish his right to testify was not waived voluntarily, knowingly and intelligently. We affirm the denial of relief.

**I. Background Facts and Proceedings.**

Our court previously summarized the facts of the underly criminal case as:

> R.W. is Williams's family member. She grew up in Oklahoma. R.W. moved to Iowa with her mother in March 2015, when she was

---

[1] Williams raised additional issues to the district court that he does not re-raise on appeal. As always, we confine our review to the issues properly raised on appeal. *See Aluminum Co. of Am. v. Musal*, 622 N.W.2d 476, 479 (Iowa 2001) ("It is a well-established rule of appellate procedure that the scope of appellate review is defined by the issues raised by the parties' briefs." (cleaned up)).

twelve.  They moved in with Williams.  Also residing in the home were Williams's wife and son.  At trial, R.W. testified to numerous instances of sexual abuse at the hands of Williams between March 2015 and July 2016, during which she was twelve and thirteen years old, including groping; manual penetration of her vagina; oral, vaginal, and anal sex.  On one occasion of abuse in Williams's bedroom, R.W. tried to escape from the situation.  Williams responded by putting a lit cigarette against R.W.'s face.  The cigarette left a mark, which developed into a scar.  According to R.W.'s trial testimony, the scar was faint, but she could still see it when she looked at herself in the mirror.

. . . .

In March 2017, R.W. was sent to a juvenile detention center. While residing at the juvenile detention center, Williams, his wife, and his son visited R.W., but R.W. declined to see them.  A few days later, on April 24, a clinical psychologist at the detention center, Dr. Christine Guevara, conducted a structured interview of R.W., during which R.W. disclosed allegations of sexual abuse at the hands of Williams. . . .

Williams was charged by trial information with first-degree sexual abuse [count I], third-degree sexual abuse [count II], and incest [count III].  The matter proceeded to a jury trial. . . .  The jury found Williams guilty as charged.

*State v. Williams*, No. 19-0912, 2020 WL 4200993, at *1 (Iowa Ct. App. July 22, 2020).  The district court sentenced Williams to life in prison without possibility of parole for count I, twenty-five years in prison for count II, and five years in prison on count III.  Williams was ordered to serve the three sentences consecutively.

On direct appeal, Williams attacked his conviction on grounds not raised here, and our court affirmed his convictions.  *Id.* at *2–4.  Having exhausted direct relief, Williams filed his first application for PCR on June 23, 2021, and moved to amend on January 6, 2022, which was granted.  While Williams raised four ineffective-assistance-of-counsel arguments, the only allegations at play here are that: (1) "trial counsel failed to call defense witnesses to show Williams was not guilty of the charges" and (2) "trial counsel failed to properly strategize and develop

a defense." At the November 2023 PCR trial, Williams called eight witnesses who had not testified at the underlying criminal trial and presented his own testimony. He also called his trial counsel as a witness. After the PCR trial, on March 6, 2024, the district court denied each of Williams's claims for relief and denied his PCR application. Williams appeals.

## II. Standard of Review.

"We generally review a district court's denial of an application for postconviction relief for errors at law." *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021). But "[t]he constitutions of the United States and Iowa guarantee a criminal defendant the right to effective assistance of counsel." *Trane v. State*, ___ N.W.3d ___, ___, No. 23-1928, 2025 WL 351664, at *7 (Iowa 2025). So a PCR application alleging ineffective assistance of trial counsel—as Williams did here—implicates a constitutional claim and our review is de novo. *See Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021).

## III. Discussion.

At its core, Williams's claims rest on allegation his trial counsel failed to present a defense that would attack the credibility of the complaining witness. He asserts that there were multiple witnesses available who would have contradicted the complaining witness's version of events, including himself, but who were not called to testify.

"To prevail on a claim of ineffective assistance of counsel, the applicant must demonstrate both ineffective assistance and prejudice." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001); *Strickland v. Washington,* 466 U.S. 668, 687

(1984). The applicant can establish ineffective assistance by proving counsel breached an essential duty. *State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012). "Improvident trial strategy, miscalculated tactics, and mistakes in judgment do not necessarily amount to ineffective assistance of counsel." *State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992). "In other words, 'we will not reverse where counsel has made a reasonable decision concerning trial tactics and strategy, even if such judgments ultimately fail." *State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006) (citation omitted). "[C]laims of ineffective assistance involving tactical or strategic decisions of counsel must be examined in light of all the circumstances to ascertain whether the actions were a product of tactics or inattention to the responsibilities of an attorney . . . ." *State v. Fountain*, 786 N.W.2d 260, 266 (Iowa 2010) (quoting *Ledezma*, 626 N.W.2d at 142).

To show prejudice, "the applicant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ledezma*, 626 N.W.2d at 143 (cleaned up).

We address Williams's claim his counsel failed to develop a defense by declining to call necessary and available witnesses. At the PCR hearing, Williams called a litany of witnesses whose testimony he claims was readily available during the criminal trial and could provide exculpatory information. Williams also testified. These witnesses may be sorted into three groups—witnesses that attended R.W.'s birthday party where one instance of sexual assault was alleged to have

happened, witnesses who could provide first-hand accounts of interactions between R.W. and Williams, and Williams himself. For simplicity, we evaluate each of the three groupings separately.

**i. Birthday Party Attendees.**

As described by R.W. in the underlying trial, one of the incidents of abuse happened at her birthday party. A group of people were spending the night in the home when Williams pulled R.W. down into the basement and sexually assaulted her. Williams asserts witness testimony contradicted R.W.'s version, impacting the jury's view of her credibility. The failure to locate and interview key witnesses may constitute ineffective assistance of counsel when the witness is the only witness to support the theory of the defense or when the witness is the sole alibi witness. *See Ledezma*, 626 N.W.2d at 146. "Generally, the decision not to call a particular witness or the defendant to testify implicates a reasonable tactical decision." *State v. Polly*, 657 N.W.2d 462, 468 (Iowa 2003); *see also Schrier v. State*, 347 N.W.2d 657, 664 (Iowa 1984) (declining to find ineffective assistance of counsel when "counsel's failure to call these witnesses involved the consistent application" of trial strategy).

At the PCR proceeding, Janice McGuire (Williams's cousin), Donna Williams (Williams's sister), and family friends Terri Halsey, Lexi Halsey, and Charles Halsey testified to their observations during and immediately after R.W.'s birthday party. Their testimony consisted of repeated accounts of the layout of Williams's house, where the birthday party was held, and the impracticability or impossibility of moving undetected from the second floor to the basement while

others slept nearby. A member of Williams's trial team, Nicole Watt, testified she was aware of the "birthday party people" in the lead-up to trial. Ultimately, the attendees of the birthday party were not called to testify, as Watt reasoned:

> So the birthday party people, I know that [Williams] did tell me that there were other people at this birthday party. I know that [R.W.] had made allegations of at least 13 to 15 different events. In my view,—and I—I guess I still agree—that [R.W.] had told so many different stories that the—to just call in some people to testify for three minutes that they didn't see anything happen at a birthday party called too much attention to one isolated event when it appeared more to me like she was lying about every single one. And so I didn't think they would be useful, and I thought that they could do more damage than good.

The decision to focus on broad allegations, instead of one incident, is consistent with counsel's testimony summarizing the broader trial strategy:

> Q. So your trial strategy—and I read the transcript, including your closing—was essentially to accuse [R.W.] of lying because her stories were inconsistent? A. Yeah. I felt that we also—I felt we also addressed her being in a juvenile detention center and the timing of that.
> Q. Okay. And you thought calling attention to the isolated incident on the birthday party would—would not win you favors with the jury and not be helpful? A. Right. I mean,—
> Q. Okay. And so I—I just ask this—You know, this was what you believed and maybe—maybe I'm wrong. Was this—was this the best strategy that you believed you had, given the facts you had, after conducting depositions, after meeting with and messaging your client multiple times? Was this, to you, the best strategy you had going forward to trial? A. Yeah. I think . . . there were other strategies that we considered, but they might have implicated a different crime so we didn't run with any of those; and I felt like this was the way to go.

The decision to keep Janice McGuire, Donna Williams, Terri Halsey, Lexi Halsey, and Charles Halsey off the witness stand did not constitute a breach of an essential duty, but, instead, a strategic choice as to not focus on one instance of alleged conduct. This strategy was reasonable. And when counsel makes a reasonable

decision over whether to call certain witnesses, we will not interfere simply because the chosen strategy does not achieve the desired result. *See Smith v. State*, 7 N.W.3d 723, 733 (Iowa 2024). And, because Williams failed to show any breach of duty, his claim of ineffective assistance fails. *See State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015) ("For most ineffective-assistance-of-counsel claims, the court may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief.").

**ii. First-hand Accounts of Relationship.**

To show ineffective assistance of counsel, the applicant must show both a breach of an essential duty and resulting prejudice; the court may consider either prong first. *See id.* Failing to prove either prong "preclude[s] relief." *Id.* It is Williams's burden to establish both prongs. *See Ledezma*, 626 N.W.2d at 143.

For testimony concerning the relationship between R.W. and Williams, we first address prejudice. We find Williams failed to show that had Williams Jr. or Turnham testified to their observation of interactions between Williams and R.W., there would be "a reasonable probability . . . the result of the proceeding would have been different." *Id.*; *Strickland*, 466 U.S. at 669.

The remaining witnesses who testified at the PCR hearing, David Williams Jr., and Troy Turnham offered brief, first-hand accounts of interactions between Williams and R.W. David Williams Jr., the son of Williams, was only in Iowa for two weeks during 2016, but did see his father during that time and referenced seeing R.W. later when she was on a trucking run with Williams. In these limited instances, he observed interactions between Williams and R.W., describing them

as "just your typical [family] relationship.  You know, she would act up and he would get on to her."  Beyond observations, he offered facts about their relationship, "You know, if she was good, he would buy her something.  I mean, they went traveling cross-country God knows how many times together."  Yet Williams Jr. testified also that he previously had an altercation with his father where he called him a "pedophile."  Turnham, an over-the-road truck driver, testified to his one interaction at a truck stop with both R.W. and Williams, describing the tenor of the afternoon stop as, "[E]verybody seemed happy. . . .  [S]he wasn't complaining, didn't seem scared or anything."  He could not remember if that short interaction was in 2016 or 2017.  The remainder of Turnham's testimony centered around his friendship with Williams.

Williams Jr. and Turnham testified to brief, isolated periods where they observed R.W. and Williams together.  This testimony does little to directly refute or negate the thirteen to fifteen instances of abusive conduct, spanning from March 2015 to September 2016, claimed by R.W.  Williams has not shown that general observations from a friend or a relative would overcome the hurdle to show a reasonable probability of a different outcome, so his claim cannot meet the prejudice hurdle.  *See Strickland*, 466 U.S. at 669.

### iii.  Testimony of Williams.

Criminal defendants have a constitutional right to testify in their own defense.  *See Rock v. Arkansas*, 483 U.S. 44, 52 (1987) (recognizing the Sixth Amendment guarantees the right to call witnesses, which includes the accused's right to offer their own testimony).  The defendant can only properly waive their

right to testify if they do so "voluntarily, knowingly, and intelligently." *Ledezma*, 626 N.W.2d at 146. The ultimate decision whether to testify belongs to the defendant. *See State v. Reynolds*, 670 N.W.2d 405, 411 (Iowa 2003). "Trial counsel's role is simply to provide advice to the defendant to enable the accused to make a well-informed decision." *Id.* "Generally, the advice provided by counsel is a matter of trial strategy and will not support a claim of ineffective assistance absent exceptional circumstances. However, when a defendant follows the misinformed advice of counsel concerning the consequences of testifying, ineffective assistance of counsel may occur." *Ledezma*, 626 N.W.2d at 147.

At the PCR hearing, Williams chose to testify about a potential motive for R.W.'s allegations. He did not claim during his testimony, nor did he raise an argument on appeal, that his counsel provided erroneous or misleading advice when considering whether Williams should testify during the underlying criminal trial. Any allegation that trial counsel misinformed Williams regarding his constitutional right to testify is wholly absent. Addressing this issue would require us to speculate about what arguments could be made, research what legal authority applies, and search the record for facts to support the argument, which is not our role. *See Ronnfeldt v. Shelby Cty. Chris A. Myrtue Mem. Hosp.*, 984 N.W.2d 418, 421 (Iowa 2023) ("We generally will not do a party's work for them . . . ."). Williams has failed to show ineffective assistance of counsel on this challenge. *See Reynolds*, 670 N.W.2d at 413 (noting that generally advice given about the decision to testify comes down to a matter of trial strategy).

**IV. Conclusion.**

On our review, we find Williams did not carry his burden to show his counsel failed to perform an essential duty by not calling necessary witnesses at trial. Witnesses who testified at the PCR hearing were neither exculpatory nor essential. The decision not to call them to the stand was well within trial reasonable strategy. Where witnesses had first-hand accounts of the relationship between Williams and R.W., Williams failed to show prejudice. Finally, Williams failed to prove his counsel breached any duty related to Williams's decision to not provide testimony at trial. Thus, Williams's ineffective-assistance-of-counsel claims fails. We affirm the denial of his PCR application.

**AFFIRMED.**