# IN THE COURT OF APPEALS OF IOWA

No. 24-0066
Filed August 20, 2025

**JAMAINE ANTHONY SIMMONS,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

    Appeal from the Iowa District Court for Marshall County, James C. Ellefson,

Judge.


    An applicant appeals the district court's denial of relief from his conviction

for sexual abuse in the third degree.  **AFFIRMED.**



    William Monroe, Burlington, for appellant.

    Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee.



    Considered without oral argument by Tabor, C.J., and Schumacher and

Chicchelly, JJ.

**TABOR, Chief Judge.**

A jury found Jamaine Simmons guilty of sexual abuse in the third degree for having sex with a fourteen-year-old girl when he was thirty-two years old. He contested his guilt in a postconviction-relief (PCR) action. Simmons now alleges two errors in the district court's denial of his PCR application. First, he claims the PCR court should have found his criminal trial counsel ineffective for advising him not to testify. Second, he contends the court should have found that he was actually innocent. Neither is a winning argument.

## I. Facts and Prior Proceedings

At the criminal trial, S.C., then fifteen, testified that she met Simmons while working out at the YMCA. They started talking through Snapchat and then met up in person. Simmons took her to his apartment, and they had sex. S.C. testified: "He stuck his penis in my vagina." After S.C. reported the sex act to her school guidance counselor, a police investigation ensued. A detective questioned Simmons, "trying to determine whether the sex act was consensual or not." When the detective explained that the girl reported meeting Simmons at the YMCA, Simmons replied that he went to "a lot of YMCAs."[1] Simmons also told the detective that there was no sexual assault. The detective took that statement to mean that "something had happened."

Investigators also executed a search warrant at Simmons's apartment. According to the detective, S.C.'s description of that apartment was "spot on."

---

[1] In a recorded jail call, Simmons later told an unknown female caller that he met S.C. at "the Y" and she came to his apartment to "hang out."

Investigators gathered evidence there, including a comforter and a discarded condom.  But testing did not reveal S.C.'s DNA on those items.

A detective testified about that lack of DNA evidence:

Based on my training and experience, it's hard to collect a female's DNA and to get positive, conclusive results back for female DNA.  I also know that DNA is shedded differently by different people and some people shed a lot of it and some people don't shed very much.  So when you combine that with you trying to find female DNA, it was not surprising to me that that did not come back conclusively.

After the State rested, the defense offered no evidence.  The court had this exchange with Simmons.

THE COURT: Sir, do you understand you do have the right to not testify and I will direct the jury to not consider that as evidence against you?  A. Correct, Your Honor.
Q. Do you also understand that if you do want to testify that nobody, not me, not Mr. Heeren, not anybody else can prevent you from testifying if you want to?  A. Understood.
Q. And is it your decision after talking to Mr. Heeren that you do not wish to testify today?  A. That's correct.

A jury convicted Simmons of third-degree sexual abuse.  Simmons did not pursue a direct appeal and instead sought postconviction relief.  His pro se petition alleged: "I did not commit this crime."  No amended petition was filed.

Not until the postconviction hearing did Simmons's counsel flesh out other claims for relief.[2]  Counsel explained:

Mr. Simmons filed this case as an actual innocence case.  He never testified at trial, so we intend to call him as a witness and he wishes to present who he is to the court and the events that transpired that led to the jury conviction.
Secondly, there is a few items we are alleging defense counsel was ineffective during the preparation for the trial and at the

---

[2] The PCR court noted that the State did not object to these new issues so it considered them "tried by consent" before ruling on them.

trial. Trial counsel, he is here to testify, I believe, for the State. Mr. Simmons will testify concerning that.

Simmons did testify at the postconviction hearing. He admitted meeting S.C. at the YMCA and talking with her on social media. He testified that he did not know her age and "just took it as a gym friend."[3] He also testified that they "hung out at [his] house one time." But he denied having sex with her. In his telling, they had some food at his apartment and watched movies. Then, he "accidently fell asleep." When he woke at "close to two in the morning," he said, "holy smokes, I need to take you home."

Related to his claim of actual innocence, Simmons testified: "My lawyer thought it would be a good idea not to testify due to my criminal background." He acknowledged having a domestic abuse assault and weapons charges, as well as committing thefts as a juvenile. On cross-examination, Simmons said he chose not to testify because he thought avoiding the risks would be "to [his] benefit."

In response, the State called his defense attorney, Tyler Heeren, as a witness. Attorney Heeren testified that he and his client went over the pros and cons of taking the stand: "We discussed the benefit of Mr. Simmons testifying and how that would either add or possibly create other options, especially in cross-examination, that could give a jury information that was not otherwise going to be available to them." Heeren recalled, in the end, he left the decision to Simmons. On cross-examination, Heeren agreed that Simmons had "always maintained his innocence." But Heeren did not regret their trial strategy: "I think we agreed that

---

[3] Of course, mistake of fact as to the victim's age is not a defense to the crime of third-degree sexual abuse. *See State v. Tague*, 310 N.W.2d 209, 212 (Iowa 1981).

there was a good chance that the jury knew what he was going to say, how he was going to testify, and to try to limit exposure on the possible damaging cross-examination. I still believe that not testifying was appropriate in this case."

In a concise and well-reasoned opinion, the PCR court found that "[c]ounsel's recommendation that Simmons not testify was a reasonable strategic decision." As the court noted, Simmons had "previous convictions in Story County for attempted burglary and willful injury causing bodily injury. Both would likely be admissible for impeachment if Simmons testified. Iowa R. Evid. 5.609(a)(1)(B)."

On the actual-innocence claim, the court decided that Simmons's testimony at the PCR hearing denying that he had sex with S.C. lacked credibility. The PCR court also summarized the evidence from the criminal trial:

> The trial jury heard the testimony of the victim and of the investigating detective and determined beyond a reasonable doubt that sexual intercourse had occurred between Simmons and the underage victim. The jury could find that Simmons' evasive answers to the detective's questions did provide corroboration for the victim's testimony, even though corroboration was not necessary.

Simmons now appeals the court's denial of postconviction relief.

## II. Scope and Standards of Review

We review PCR proceedings for correction of legal errors. *Krogmann v. State*, 914 N.W.2d 293, 306 (Iowa 2018). But when the applicant raises a constitutional claim, such as ineffective assistance of counsel, we review the proceedings de novo. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). We also review actual-innocence claims de novo. *Dewberry v. State*, 941 N.W.2d 1, 4 (Iowa 2019).

## III. Analysis

### A. Ineffective Assistance of Counsel

Simmons claims the PCR court erred in concluding he did not prove that attorney Heeren provided ineffective assistance of counsel. To prove ineffective assistance, an applicant must show that counsel failed to perform an essential duty resulting in prejudice. *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). We presume attorneys act competently and will not find prejudice unless the applicant shows it was reasonably probable that, but for counsel's unprofessional error, the proceeding's result would have been different. *Id*.

On appeal, Simmons expands the claim that he presented to the PCR court. Rather than making a strategic choice not to testify, Simmons now insists that he followed "the misinformed advice of counsel concerning the consequences of testifying." He contends that his attorney "convinced him all of his prior convictions would come out." But he complains that there was "no mention" at the PCR trial that Heeren filed a successful motion in limine excluding evidence of "any alleged criminal conduct" not charged in this case. Because Heeren allegedly did not inform him of that limine ruling, Simmons contends he was not accurately advised of the minimized consequences of testifying.

The State counters by contesting error preservation:

> Simmons argues that trial counsel was ineffective because he failed to explain the contents of a motion in limine that may have kept some of Simmons's criminal history out of evidence. Although a general ineffective assistance of counsel claim regarding Simmons's choice not to testify at trial was raised at the PCR hearing, this argument was never made and should not be considered as the State had no opportunity to respond to it and the court did not rule on it.

We agree that Simmons did not preserve error on his challenge to trial counsel's advice about the motion in limine. On Simmons's general claim that counsel was ineffective during their discussions of his right to testify, we reach the same conclusion as the PCR court. Whether to testify was a strategic decision that counsel left to Simmons. The trial and PCR records—including Simmons's own statements—display the reasonableness of counsel's performance. *See State v. Reynolds*, 670 N.W.2d 405, 411 (Iowa 2003) (noting "trial strategy plays a large role in whether a defendant testifies").

### B. Actual Innocence

Turning to the claim of actual innocence, it was Simmons's burden to show "by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant." *See Dewberry*, 941 N.W.2d at 5 (describing "demanding actual-innocence standard" adopted in *Schmidt v. State*, 909 N.W.2d 778, 793 (Iowa 2018)). Simmons does not satisfy that demanding standard here.

On appeal, Simmons points to the lack of DNA evidence and inconsistencies in S.C.'s testimony. But those inconsistencies—about the date when she met Simmons—were very minor. Overall, the jury heard compelling testimony from S.C., details of which were confirmed by law enforcement and an employee of the YMCA where she met Simmons. We reject his claim of actual innocence.

**AFFIRMED.**