# IN THE COURT OF APPEALS OF IOWA

No. 18-0457
Filed March 20, 2019

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**LAWRENCE EUGENE WALKER,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, John D. Telleen, Judge.

The defendant challenges some of the district court's evidentiary rulings following his convictions for sexual abuse in the second degree and lascivious acts with a child. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**POTTERFIELD, Presiding Judge.**

Lawrence Walker appeals from his convictions for sexual abuse in the second degree and lascivious acts with a child. He maintains the district court abused its discretion when it excluded evidence under the rape-shield law. Additionally, he maintains the court erred in allowing the doctor to testify to hearsay that did not fall within the exception for statements for medical diagnosis and that trial counsel provided ineffective assistance by failing to object when a nurse testified to similar improper hearsay testimony.

**I. Background Facts and Proceedings.**

On the night of June 20, 2016, Walker babysat three children in his brother's home at his brother's request: four-year-old E.W., E.W.'s eight-year-old brother, and a third child.

The next day, E.W. told her mother something that led the mother to take E.W. to a local hospital, where she was examined by a sexual assault nurse examiner, and to involve the police. E.W. was interviewed at a child protection center approximately twenty days later, on July 8.

Then, on July 14, Detective Maureen Hamme met with Walker at the police station. After advising him of his *Miranda* rights, Detective Hamme informed Walker that E.W. had accused him of touching her sexually. In a taped interview, which was ultimately played for the jury, Walker told the detective E.W. was asleep downstairs on the couch before he carried E.W. upstairs to her parents' room. He admitted lying next to E.W. on the bed while wearing only his boxers. He claimed that at some point, he thought E.W. may have wet the bed, so he took off her underwear, wiped her vagina, then put her underwear back on

her. After more questioning, Walker admitted putting E.W. on his lap and rubbing his hand on her vagina. The detective asked Walker if he thought he needed help, and he nodded in response. Later, when the detective asked Walker if he had anything else to tell her, he responded, "I didn't fuck her or anything if that's what you're asking. I touched her a little bit and that's it." Walker was then placed under arrest. He was charged with sexual abuse in the second degree and lascivious acts with a child.

After jury selection for Walker's trial had already begun, in January 2018, the State filed a motion in limine asking the court to exclude evidence it had recently learned the defense intended to offer: that E.W.'s mother told the doctor E.W. met with at the child protection center E.W.'s eight-year-old old brother "had engaged in staring at E.W.'s body," "the mother felt it necessary to separate E.W. and her older brother," and "the mother felt it necessary to make sure E.W. and her older brother have clothes on when they were with each other." Additionally, the defense wanted to present evidence E.W.'s father had told the detective E.W.'s older brother had been sexually abused at the some point in the past. The State argued the evidence should be excluded because it was irrelevant, inadmissible, and protected by the rape-shield law. In arguing against the evidence being admitted at trial, the State recognized it was being offered to show, "It's not this defendant who sexually abused the child victim, it's somehow her brother who was eight years old at the time who had possible allegations of possible sexual abuse with other people." The defense responded the evidence should be admitting, arguing:

Obviously Mr. Walker denies sexually abusing E.W. in this case. Which raises the obvious question where is E.W. coming up with her knowledge of sexual activities or claiming that something sexual happened to her. We believe this evidence is relevant to— for two reasons: One, how E.W. at four years old learned about sexual matters and, number two, the possibility that she was sexually abused by someone else and due to her age, whatever circumstances, has in her mind gone to Mr. Walker perpetrating the abuse rather than someone else.

The State suggested to the court that it need not determine the actual merits of Walker's arguments because pursuant to Iowa Rule of Evidence 5.412—which codifies the rape-shield law—notice of evidence that falls within the rule must be given no later than fourteen days before trial, which Walker had failed to do. In response, Walker disputed that the rape-shield law applied, arguing it only applied to sexual behaviors of the alleged victim and not the sexual behaviors of others.

The district court excluded the evidence from trial, stating,

[T]he clear implication of all of those points and as [the defense] even argued that they are relevant to show the possible source of E.W.'s knowledge of sexual issues and they're relevant to show that E.W. confused the identity of her attacker. The clear implication from those points of evidence from the defense's standpoint is that there was another attacker at a previous time and it was the eight-year-old brother and that's why E.W. knows of sexual matters and perhaps she is confusing the identity of the attacker. So it's clearly evidence designed to show that EW was subject to abuse sometime in the past and she's got it all wrong now and it's not this defendant but rather it is the eight-year-old brother.

The court also indicated the defense had failed to provide timely notice, as required by Iowa Rule of Evidence 5.412(c)(1).

At trial, the nurse who examined E.W. on June 21 testified, without objection from the defense, that E.W. told her, "Larry did this to me" as E.W.

bounced up and down. E.W. further told her, "He made me sit on his crotch and did this"—E.W. again made a bouncing motion—"then he carried me downstairs and got me juice." According to the nurse, E.W. continued, stating, "He touched my butt crack really deep" and "I had my underwear on so he took it off." E.W. also reported Larry "broke her ankle," which the nurse confirmed had not actually occurred, as E.W.'s ankles were not broken. When asked what she meant by that, E.W. twisted her ankle side to side. When asked if E.W. told her where this occurred, the nurse testified E.W.'s mother told her the incident happened in the parents' bedroom and that it occurred the night before. The nurse conducted a physical exam of E.W. and completed a sexual assault kit.

Over defense objection,[1] Dr. Harre, who works as a physician at the child protection center, testified that when she met with E.W. on July 8, she asked E.W. if there had been anything about Larry that was uncomfortable. E.W. indicated there was and said, "Larry doing this" and then made a bouncing motion. Dr. Harre asked E.W. what was Walker's clothing situation at the time it happened, and E.W. reported his underwear was off and he took her underwear off. E.W. said she was "on his crotch" at that time and that they were in her parents' bedroom. Dr. Harre asked E.W. if other parts of her body had been touched, and E.W. indicated touching with fingers. When asked where else she was referring to, E.W. pointed between her legs. Dr. Harre asked if she meant her crotch, and E.W. nodded. E.W. reported this had hurt her. When asked, she

---

[1] Walker filed a pre-trial motion in limine challenging Dr. Barbara Harre's testimony as to E.W.'s statements about sexual abuse. The court entered a final ruling before trial began overruling the objections to Dr. Harre's testimony. The defense did not object again at the time Dr. Harre testified.

reported the incident occurred during the daytime. The doctor testified that she conducted a physical exam of E.W. after the interview and found no injuries.

A criminalist for the department of criminal investigations testified she conducted DNA testing on the sexual assault kit materials that were sent as well as the known swabs from E.W. and Walker. From a sample of the anal swab that was taken of E.W., the criminalist, using a microscope, was able to identify a sperm cell. However, the sample was too weak and did not contain enough DNA to interpret who the sperm cell was from. Similarly, the criminalist testified that a sample from the back swab and from the crotch of the inside of E.W.'s underwear indicated the DNA of two individuals were present, but the samples were not strong enough for further interpretation.

E.W., who was five years old at the time of trial, was called to testify. She testified she had not seen Larry in "a long time," since she "was four when he did that bad thing." When asked what she meant by the bad thing, E.W. testified, "He did it from his private" and "Because he lifted me up and down." The prosecutor asked E.W., "Can you tell me what you mean when you tell the jury he put you up and down? Can you show us?" In response, E.W. pointed and said, "Just private." When presented with an anatomical drawing of a young girl and asked to circle the corresponding spot on the picture, E.W. drew a circle around the vagina. She testified it happened in her parents' bedroom and that she had been sleeping downstairs when Walker picked her up and carried her to the room. The following exchange occurred on direct examination:

> Q. What did Larry do to you? A. He did private thing but I don't remember because it was a long time ago.

Q. You can talk about it, it's okay.  A. It was a long time ago because I was four.
Q. You were four and you said it was really bad.  A. [The witness nodded her head affirmatively].
Q. How did you it make you feel?  A. I was sleeping on him.
Q. Who was you sleeping on?  Larry?  A. I was sleeping when Larry did it to me.
Q. When he did what to you?  A. On his private part.

The prosecutor than gave E.W. an anatomical drawing of a male child and asked if E.W. could show her which part Larry did it on.  E.W. circled the penis on the anatomical drawing.

Larry testified in his own defense.  He recanted his statements to the detective, asserting he only made the incriminating statements because she would not take no for answer.  He further testified that at the time he met with the detective in the morning hours, he had slept only a few hours the night before and had taken Vicodin and sleeping pills before consuming alcohol.  Walker testified that he had carried E.W. from where she was sleeping on the couch to her parents' bed and had stripped down to his boxers and laid next to her in the bed.  He also testified he had removed her underwear to check if she had urinated but testified he then put them directly back on her.  He denied otherwise touching E.W. and stated he never placed her in his lap.

The jury convicted Walker as charged.  He was later sentenced to a term of incarceration not to exceed twenty-five years, of which he is required to serve seventy percent before becoming parole eligible.

Walker appeals.

## II. Discussion.

### A. Rape Shield Law.

Walker maintains the district court abused its discretion when it prevented him from introducing evidence to show that E.W.'s mother feared E.W.'s eight-year-old brother—an alleged victim of prior sexual abuse—would act out sexually on E.W. "We review trial court rulings on admissibility of evidence under rule 5.412 in criminal prosecutions for abuse of discretion." *State v. Alberts*, 722 N.W.2d 402, 407 (Iowa 2006).

At the time Walker argued the evidence was admissible at trial, the district court understood that Walker was offering it to show E.W.'s brother had sexually abused E.W. prior to June 20, 2016. In its ruling from the bench, the court stated, "The clear implication from those points of evidence from the defense's standpoint is that there was another attacker at a previous time"; Walker did not dispute this statement by the court. Assuming Walker was offering the evidence to show E.W. had been sexually abused prior to the June 20 incident, such evidence would fall within the prohibition against evidence of a victim's other sexual behavior.[2] *See* Iowa R. Evid. 5.412(a)(1), (2) (providing evidence is inadmissible in a criminal proceeding involving alleged sexual abuse when it is "[r]eputation or opinion evidence offered to prove that a victim engaged in other sexual behavior" or "[e]vidence of a victim's other sexual behavior other than reputation or opinion evidence"). In reaching this conclusion, we assume the

---

[2] Before January 1, 2017, the rule referenced "past sexual behavior" instead of "other sexual behavior." The changed language of "other sexual behavior" now mirrors that of the federal rule. *Compare* Fed. R. Evid. 412, *with* Iowa R. Evid. 5.412. Trial was held in January 2018.

change of language in rule 5.412 from "past sexual behavior" to "other sexual behavior" was not meant to cause a substantive change in the interpretation of the rule. *See State v. Alberts*, 722 N.W.2d 402, 408 (Iowa 2006) (defining "past sexual behavior" as "a volitional or non-volitional physical act that the victim has performed for the purpose of the sexual stimulation or gratification of either the victim or another person or an act that is sexual intercourse, deviate sexual intercourse or sexual contact, or an attempt to engage in such an act, between the victim and another person").

On appeal, Walker asserts the evidence was not offered to show E.W. had been sexually abused before June 20 but rather that the brother was the one responsible for the abuse E.W. reported and that she mistook or confused the identity of the perpetrator. Even if we assume this argument is preserved for our review,[3] we still find no abuse of discretion by the district court. The evidence may have been admissible to show a different perpetrator committed the act, as the rape-shield law provides an exception for "[e]vidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence." Iowa R. Evid. 5.412(b)(1)(A). However, if a defendant intends to offer evidence under the exceptions to the rape-shield law, "the defendant *must* [f]ile a motion to offer the evidence at least 14 days before trial."[4] Iowa R. Evid. 5.412(c)(1)(A) (emphasis

---

[3] It does not appear from the transcript that the district court ever considered this argument. Generally an argument must be made to and decided by the district court in order to preserve it for our review. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012).

[4] Pursuant to the rule, the court can excuse the failure to file the motion fourteen days before trial if "the court determines that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence, or that the evidence

added); *see also Iowa Supreme Ct. Attorney Disciplinary Bd. v. Attorney Doe No. 819*, 894 N.W.2d 1, 5 (Iowa 2016) (noting the word "must" "clearly expressed the mandatory nature of the rule"). Although we have not have found an Iowa authority that discusses the appropriate sanction for a defendant's failure to file timely notice of the evidence, we note the Supreme Court has decided it is not unconstitutional to exclude evidence on that basis. *See Michigan v. Lucas*, 500 U.S. 145, 152–53 (1991) ("The notice-and-hearing requirement serves legitimate state interests in protecting against surprise, harassment, and undue delay. Failure to comply with this requirement may in some cases even justify the severe sanction of preclusion.").

Because the evidence Walker proposed to introduce at trial falls within the rape-shield law and Walker did not provide notice of the evidence until the eve of trial, the district court did not abuse its discretion when it granted the State's motion in limine to exclude the evidence.

**B. Doctor's Testimony.**

Walker claims the district court erred when it allowed Dr. Harre to testify regarding statements made by E.W. that do not fall within the hearsay exception of statements for medical diagnoses. *See* Iowa R. Evid. 5.803(4). We review hearsay rulings for correction of errors at law. *State v. Dullard*, 668 N.W.2d 585, 589 (Iowa 2003).

---

relates to an issue that has newly arisen in the case, and the court sets a different time." Iowa R. Evid. 5.412(c)(1)(A). Walker did not ask the district court to make any such determinations, and, on appeal, he does not argue the district court could or should have done so.

The rationale for the hearsay exception "is that the statements made by a patient to a doctor for purposes of medical diagnosis or treatment are 'likely to be reliable because the patient has a selfish motive to be truthful.'" *State v. Smith*, 876 N.W.2d 180, 185 (Iowa 2016) (citation omitted). The exception imposes two requirements: (1) "the exception applies to statements 'made for purposes of medical diagnosis or treatment'" and (2) "the statements must describe 'medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.'" *Id.* (quoting Iowa R. Evid. 5.803(4)). These conditions are necessary for the exception to apply because the exception is based upon "special guarantees of credibility" that rely upon the patient's understanding "that a false statement in a diagnostic context could result in misdiagnosis." *Id.*

Walker maintains that E.W.'s statements to Dr. Harre at the child protection center, to which Dr. Harre testified at trial, do not meet either of the requirements. We disagree. Our supreme court has found that the first requirement was met in the context of a child-abuse case "where a child's statements are made during a dialogue with the health care professional and are not prompted by concerns extraneous to the patient's physical or emotional problem, real or perceived." *State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998). In *State v. Neitzel*, the defendant argued the first prong was not satisfied because the child was not told the medical purpose of the interviews at the time they occurred. 801 N.W.2d 612, 622 (Iowa Ct. App. 2011). Our court disagreed, noting the medical professional who testified explained the purpose of the

examination of the child was for diagnosis and treatment, that the professional had told the child the purpose of the visit was to check her to make sure she was healthy, and that they had discussed the difference between the truth and a lie. *Id.*

Here, Dr. Harre testified she met with E.W. separate from her mother. When she did so, she explained that she was a physician who "take[s] care of kids from little babies to big children to high school kids." She explained that she cares for kids who have injuries to their bodies that are physical but also injuries like hurt feelings "or that they feel bad about how someone may have interacted with them." E.W. understood Dr. Harre's role, as she was able to express that she is comfortable with doctors except when they give her shots. From there, Dr. Harre began a review of symptoms approach, checking to see "how the child is doing overall." During these questions, Dr. Harre noted that E.W. was quick to respond until the doctor asked E.W. a question about whether anything had come into contact with her back or bottom that had hurt her. This question led to E.W. making statements about Walker. We acknowledge Dr. Harre did not testify that she explained the importance of truthfulness to E.W. before the examination began, but we do not find this dispositive. *See State v. Lucier*, No. 15-1559, 2017 WL 4570531, at *2 (Iowa Ct. App. Oct. 17, 2017) (finding the child's statements to the doctor were admissible under the exception where there was no evidence the child understood the difference between truth and lies); *State v. Overstreet*, No. 15-1704, 2016 WL 7403728, at *6 (Iowa Ct. Ap. Dec. 21, 2016) ("While we note Dr. Harre testified she did not instruct [the child] not to lie, there is no indication in the record T.O.'s motive in making the statements to Dr.

Harre 'was other than as a patient responding to a doctor's questioning for prospective treatment.'" (citation omitted)); *State v. Woolison*, No. 01-1071, 2003 WL 1966446, at *2 (Iowa Ct. App. Apr. 30, 2003) (rejecting defendant's argument first requirement was not met because a three-year-old child lacks "selfish motive in receiving proper treatment," which guarantees the trustworthiness of the statements).

Walker maintains the second requirement for the exception—that the content of the statement be the kind reasonably relied upon by a physician in treatment or diagnosis—is not met because E.W. was referred to Dr. Harre "due to suspected child abuse, not because of active medical concerns."  The only authority Walker offers in support of this argument is a Maryland case in which the court excluded the child's statements to a nurse about sexual abuse that had occurred fourteen months before, the statements were made when the child was not displaying any physical or psychological symptoms, the questions asked by the nurse seemed to have an "overarching investigatory purpose," and questions about the perpetrator's identity were not relevant to the child's safety needs, as it was known the child had not seen the perpetrator in more than a year.  *Coates v. State*, 930 A.2d 1140, 1162–64 (Md. Ct. Spec. App. 2007).  And we have rejected similar arguments before.  *See Woolison*, 2003 WL 1966446, at *2 ("Additionally, [the defendant] asserts [the child's] statements to Dr. Harre should have been excluded because Dr. Harre was part of a multi-disciplinary team who main function was investigation.  We disagree.").

Dr. Harre testified she offers "comprehensive medical assessments for concerns about medical, behavioral," and emotional needs of children.

Statements made by patients "in connection with diagnosis or treatment of emotional trauma" can fall within the exception, so long as the statements are made to professionals "sufficiently qualified by training and experience to provide that diagnosis and treatment." *Hildreth*, 582 N.W.2d at 169. Walker has not—either at trial or on appeal—questioned Dr. Harre's qualifications. Dr. Harre testified that by the end of the exam, she is "able to identify whether [the child] need[s] any additional labs or X-rays or other referrals or support, what type of follow-up we are looking at." Additionally, Dr. Harre testified at trial that E.W. was still a patient of hers.

E.W.'s statements to Dr. Harre meet the requirements of medical statements for the purpose of diagnosis or treatment; the district court did not err in admitting the statements at trial.

**C. Nurse's Testimony.**

Walker maintains he received ineffective assistance from trial counsel when counsel allowed the nurse who examined E.W. on June 21 to testify without objection about statements E.W. made to her. He argues E.W.'s statements to the nurse would not have been admitted if counsel had objected because they do not meet the hearsay exception of medical statements made for diagnosis or treatment.

"Ordinarily, we do not decide ineffective-assistance-of-counsel claims on direct appeal." *State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006). "We prefer to [p]reserve such questions for postconviction proceedings so the defendant's trial counsel can defend against the charge." *Id.* We depart from the preference only in cases where the record is adequate to evaluate the claims. *Id.* "Only in rare

cases will the trial record alone by sufficient to resolve the claim on direct appeal." *Id.* Because we cannot say what foundation the State could have laid to show E.W.'s statements meet the hearsay exception if they were challenged by trial counsel and because it appears from the record trial counsel may have made a strategic decision not to challenge the testimony of the nurse, we believe the most prudent action is to preserve Walker's claims for possible postconviction relief. *See* Iowa Code § 814.7(3).

## III. Conclusion.

The district court did not abuse its discretion in excluding evidence based on the rape-shield law. Additionally, the court did not err in admitting Dr. Harre's testimony about E.W.'s statements pursuant to a hearsay exception. We affirm Walker's convictions. We preserve his claim of ineffective assistance for possible postconviction relief.

**AFFIRMED.**