STATE of Iowa, Appellee,

v.

Randolph Louis TATE, Appellant.

No. 04–1690.

Supreme Court of Iowa.

Feb. 24, 2006.

Linda Del Gallo, State Appellate Defender, and Theresa R. Wilson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Stephen Holmes, County Attorney, and Timothy J. Meals and Shawn Smith, Assistant County Attorneys, for appellee.

STREIT, Justice.

The defendant, Randolph Tate, appeals from his conviction and sentence upon his guilty plea to voluntary absence. He contends his counsel was ineffective in permitting him to enter a guilty plea and failing to file a motion in arrest of judgment because the district court misinformed him of the maximum penalty for his crime. Because we conclude Tate has not established his ineffective-assistance-of-counsel claim, we affirm the decision of the court of appeals and preserve the issue for postconviction relief proceedings.

## I. Facts and Prior Proceedings

Randolph Tate walked out of the Curt Forbes Residential Facility in Ames and did not return. Tate was serving a sentence at the facility as part of a work release program.[1] Tate was authorized to leave the facility on a food furlough, but instead of returning at the specified time, he went to Fort Dodge to visit his terminally-ill girlfriend. He was arrested later that week in Fort Dodge and charged with voluntary absence in violation of Iowa Code section 719.4(3) (2003).

Tate entered into a plea agreement with the State whereby the State and the defendant recommended the court impose a sentence of credit for time served and a mini-

---

1. Tate was convicted in 2003 for operating a motor vehicle without the owner's consent. He was committed to the custody of the Director of the Department of Corrections of the State of Iowa for a period of two years for this crime.

mum fine. The plea agreement was not conditioned on the district court's willingness to be bound by it. Through a discussion with Tate, the court established there was a factual basis for the plea and the plea was both informed and voluntary. When describing the penal consequences to Tate's guilty plea, the court did not inform Tate that Iowa Code section 901.8 mandated the sentence for voluntary absence "begin at the expiration of any existing sentence." However, the court described the penalty to Tate in the following manner:

> THE COURT: You are charged on the trial information with voluntary absence. This is, as I noted, a serious misdemeanor. It, therefore, carries with it a maximum penalty upon conviction of one year imprisonment in the county jail and a fine of up to $1500.00. Do you understand the maximum penalty? A. Yes, sir.

> THE COURT: There is a minimum penalty associated with this charge, if the Court does not suspend or defer judgment, and that minimum penalty is a fine of $250.00. Do you understand that? A. Yes, sir.

The court went on to inform Tate the sentencing judge would not be bound by the plea agreement and the sentencing judge could "conceivably" impose any penalty up to the maximum period provided by law.

On September 9, 2004, Tate was sentenced to six months imprisonment consecutive to his underlying sentence for operating a motor vehicle without the owner's consent. The sentencing judge stated the "defendant shall be given credit for time previously served as shown by the records of this county to the extent that credit was not being received in [the underlying operating a motor vehicle without the owner's consent conviction]." Tate immediately told the sentencing judge "I would like to appeal it. Yes. I would like to retract [my guilty plea]. This is not what I was told was going to happen. I'm sorry." The court responded "[y]ou can discuss this with your attorney. Any notice of appeal, Mr. Tate, must be filed in writing with the Clerk." To which Tate responded "I just wanted it to be part of the record. I'll file it then."

Tate did in fact appeal his conviction, contending his counsel was ineffective for failing to file a motion in arrest of judgment prior to sentencing. Specifically, Tate contends his trial counsel erred by not filing a motion in arrest of judgment when the district court did not inform him that the sentence for voluntary absence must be consecutive to the sentence for the underlying crime. *See* Iowa Code § 901.8 ("If a person is sentenced for escape under section 719.4 . . . the sentencing judge shall order the sentence to begin at the expiration of any existing sentence."). Therefore, he claims, when his trial counsel did not file a motion in arrest of judgment to correct this alleged error, his trial counsel was ineffective.

## II. Scope of Review

■ Generally our review of a challenge to the entry of a guilty plea is for correction of errors at law. *State v. Keene,* 630 N.W.2d 579, 581 (Iowa 2001). However, when the challenge arises in the context of an ineffective-assistance claim, our standard of review is de novo. *State v. Tejeda,* 677 N.W.2d 744, 754 (Iowa 2004).

■ An ineffective-assistance-of-counsel claim in a criminal case "need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes." Iowa Code § 814.7(1) (2005). The defendant may raise the ineffective assistance claim on direct appeal if he or she "has reason-

able grounds to believe that the record is adequate to address the claim on direct appeal." *Id.* § 814.7(2). Ordinarily, we do not decide ineffective-assistance-of-counsel claims on direct appeal. *See State v. Taylor*, 310 N.W.2d 174, 179 (Iowa 1981). We prefer to reserve such questions for postconviction proceedings so the defendant's trial counsel can defend against the charge. *Id.* However, we depart from this preference in cases where the record is adequate to evaluate the appellant's claim. *State v. Schoelerman*, 315 N.W.2d 67, 71 (Iowa 1982); *State v. Ogilvie*, 310 N.W.2d 192, 197 (Iowa 1981); Iowa Code § 814.7(3) ("If an ineffective assistance of counsel claim is raised on direct appeal from the criminal proceedings, the court may decide the record is adequate to decide the claim or may choose to preserve the claim under chapter 822 [postconviction proceedings]."). Only in rare cases will the trial record alone be sufficient to resolve the claim on direct appeal. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006) (stating claims of ineffective assistance of counsel raised on direct appeal are ordinarily reserved for postconviction proceedings to allow full development of the facts surrounding counsel's conduct); *State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978). For the reasons that follow, we deem the record insufficient.

### III. Merits

For his ineffective-assistance-of-counsel claim to succeed, Tate "must prove by a preponderance of the evidence that (1) his counsel failed to perform an essential duty, and (2) prejudice resulted." *Tejeda*, 677 N.W.2d at 754.

In analyzing this claim, we need not determine whether his trial counsel's performance was deficient before examining the prejudice component of his ineffective-assistance claim. *Taylor v. State*, 352

N.W.2d 683, 685 (Iowa 1984). As stated by the United States Supreme Court,

> The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674, 699 (1984). We therefore focus our analysis solely on the prong which is not sufficiently supported by the record—resulting prejudice.

### A. Resulting Prejudice

Because "'[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial,'" *Hill v. Lockhart*, 474 U.S. 52, 57–58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 209 (1985) (quoting *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697), the defendant claiming ineffective assistance of counsel with respect to a guilty plea must prove that, but for counsel's breach, there is a reasonable probability he or she would have insisted on going to trial. *Straw*, 709 N.W.2d at 133. Therefore, "'[e]ven if a defendant shows that particular errors of counsel were unreasonable ... the defendant must show that they actually had an adverse impact on the defense.'" *Hill*, 474 U.S. at 58, 106 S.Ct. at 370, 88 L.Ed.2d at 209 (quoting *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697).

Tate's prejudice argument is limited because the record in this case consists only of the transcript of the guilty plea proceeding and the transcript of the sentencing

proceeding. The thrust of Tate's argument is that he complained of prejudice immediately after the court announced its sentence when he said "I would like to appeal it. Yes. I would like to retract. This is not what I was told was going to happen. I'm sorry." This argument has some merit because there is a subtle difference between a defendant who first claims in his or her appellate brief or postconviction application that he or she would have chosen a trial, and one like Tate who indicates a desire to withdraw his plea prior to the close of the sentencing proceeding. In the latter instance, the defendant's actions more likely indicate the defendant's bona fide desire to choose trial because his counsel's error was at the forefront of his mind. However, standing alone, this statement is barely more than a conclusory claim of prejudice, and as we stated in *State v. Myers*, 653 N.W.2d 574, 579 (Iowa 2002), "conclusory claims of prejudice" are not sufficient to satisfy the prejudice element.

The record also does not contain other items important to our analysis. For example, the record does not indicate whether Tate's trial counsel told him about the possibility of consecutive sentences. *See Straw*, 709 N.W.2d at 138. The record also does not indicate there was a specific defense or trial strategy forgone by the guilty plea. In addition, the lone statement "this is not what I was told was going to happen" is unclear itself. The statement begs the question: what was Tate told? Without knowing what Tate was told, we cannot determine whether Tate was prejudiced.[2]

When presented with this sole assertion of prejudice, we are simply unable to find

Tate has proven, by a preponderance of the evidence, that but for his trial counsel's failure to file a motion in arrest of judgment after the judge did not mention the consecutive sentence requirement, there is a reasonable probability he would have insisted on going to trial. This case exemplifies why, as noted above, an ineffective-assistance-of counsel claim is normally best reserved for postconviction proceedings. *See Straw*, 709 N.W.2d at 138. Because Tate is unable to prove the prejudice element, his ineffective-assistance claim must fail. However, we do preserve the issue for postconviction proceedings so both Tate and his trial counsel will have the opportunity to establish a record.

## IV. Conclusion

Because we find Tate has not established his ineffective-assistance-of-counsel claim regarding his guilty plea, we affirm Tate's conviction and sentence and preserve this issue for postconviction proceedings.

**AFFIRMED.**

All justices concur except LAVORATO, C.J., and WIGGINS, J., who dissent separately.

LAVORATO, Chief Justice (dissenting).

I join Justice Wiggins' dissent. I would also point out that this case underscores another reason, in addition to the reasons I stated in my dissent in *State v. Straw*, 709 N.W.2d 128, 138–45 (Iowa 2006) (Lavorato, C.J., dissenting), why we should presume prejudice, vacate the judgment of sentence and conviction, and remand to allow the defendant to plead anew. Under the majority's approach, a postconviction

---

**2.** It may have been preferable for the trial judge, under the circumstances, to respond to the defendant with a question of "What were you told?" However, in this setting, the court may have concluded such a question could violate the attorney-client privilege. This concern disappears during postconviction relief proceedings.

relief proceeding in cases like this one will now likely degenerate into a credibility contest between the lawyer and his or her former client, a contest the former client will in all likelihood lose. We should not put lawyers and defendants in this unenviable position. Such unseemly conflict would be unnecessary, and district court performance would be improved, if we simply enforced Iowa Rule of Criminal Procedure 2.8(2)(b)'s requirements.

WIGGINS, J., joins this dissent.

WIGGINS, Justice (dissenting).

The record is unequivocal that at the time the district court accepted the defendant's guilty plea, the court failed to advise the defendant that the sentence for voluntary absence began "at the expiration of any existing sentence." Iowa Code § 901.8 (2003). I believe this failure violated our rule requiring the court to inform the defendant of "[t]he mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered." Iowa R.Crim. P. 2.8(2)(b)(2). For the reasons stated in the dissenting opinion in *State v. Straw*, 709 N.W.2d 128, 145 (Iowa 2006) (Lavorato, C.J., dissenting), I would presume prejudice, vacate the judgment of sentence and conviction, and remand the case to the district court.

LAVORATO, C.J., joins this dissent.