## IN THE COURT OF APPEALS OF IOWA

No. 16-0538
Filed October 26, 2016

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**ALEXANDER CAES,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Scott County, John D. Telleen (plea) and Paul L. Macek (sentencing), Judges.

A defendant appeals his drug-related felony conviction and sentence. **AFFIRMED.**

Lauren M. Phelps, Davenport, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Alexander Caes challenges his guilty plea and sentence for possession of pseudoephedrine with the intent that it be used to manufacture methamphetamine. Caes alleges defense counsel was ineffective in failing to explain the terms of the plea agreement and failing to file a motion in arrest of judgment. Because the information conveyed in the written plea agreement and plea-hearing colloquy contradicts Caes's allegations about counsel's performance, we affirm.

Narcotics investigators from Scott, Clinton, and Jackson Counties were tracking the repeated purchases of pseudoephedrine by several individuals during the spring of 2015. Their investigation culminated with the search of a methamphetamine laboratory at the residence where Caes lived with his father near Maquoketa. Caes arrived during the execution of the search warrant, carrying a bottle of lye. According to the minutes of evidence filed with the State's trial information, witnesses interviewed at the lab suggested Caes had "completed a one pot methamphetamine cook that morning."

Investigators noted the NPLEX (National Precursor Log Exchange) showed Caes had purchased pseudoephedrine forty-eight times and had been blocked from purchasing fourteen times between May 2012 and April 2015. The NPLEX recorded Caes as having nine pseudoephedrine purchases and three pseudoephedrine blocks in Scott County during that time frame.

In October 2015, the Scott County Attorney charged Caes with possession of pseudoephedrine with the intent that it be used to manufacture a controlled substance, in violation of Iowa Code section 124.401(4)(b) (2015), a class "D"

felony, and conspiracy to commit a nonforcible felony, in violation of sections 706.1(1)(a) or (b) and 706.3, a class "D" felony. In January 2016, the parties filed a memorandum of plea agreement, in which Caes agreed to plead guilty to possession the precursor and the State agreed to dismiss the conspiracy count. The written agreement set out the sentencing concessions as follows:

> This is an open plea. The State may make any recommendation at the time of sentencing. The State agrees to recommend concurrent sentencing to the drug related matters in Jackson County, Iowa which was part of this investigation. At a minimum, the Defendant shall be screened for placement in the Residential Correctional Facility.

The written agreement further stated: "Defendant understands any period of incarceration now or hereafter imposed in this case may carry a minimum period of one-third of the sentence before the Defendant would be eligible for parole pursuant to section 124.413 of the Code of Iowa." Caes signed the written plea agreement. His attorney also signed below the statement: "I have advised the Defendant of all particulars set out above and of the consequences thereof."

At the plea hearing, the district court advised Caes the precursor possession offense was "punishable by an indeterminate term of incarceration not to exceed five years." When the court asked: "Do you understand that?" Caes responded, "Yes." The court also discussed the plea agreement with Caes, who assured the judge nobody had made any promises or predictions to him about what the sentencing court would do. Caes also told the court he was satisfied with the advice and counsel of his attorney. Caes assured the court he had no trouble reading, writing, or understanding the English language.

After the court carefully performed the colloquy required by Iowa Rule of Criminal Procedure 2.8(2)(b), Caes confirmed he wished to plead guilty. Caes then described in his own words what he did to commit the offense: "On January through April 2015 I was in Scott County, and I bought Sudafed, and I was using it to help with my dad's manufacture of controlled substance, meth."

The court accepted Caes's guilty plea and ordered a presentence investigation (PSI) report. The PSI report recommended incarceration.

At the sentencing hearing, the State expressed its agreement with the PSI report's recommendation. The State then reported: "As the plea agreement contemplated, the defendant was screened for the Residential Corrections Facility, and having previously spent time there and having previously not been successful on probation, he was denied placement there." The State then followed the terms of the plea agreement by recommending Caes's indeterminate five-year term be served concurrently with the term he received for the Jackson County case. Defense counsel recommended a suspended sentence.

The district court accepted the State's recommendation, offering the following rationale for the prison sentence: "Given your criminal history, your prior issues with probation, your substance abuse history, the nature and circumstances of this crime, for general and specific deterrence, it is the judgment of the court that you should be incarcerated." Caes now appeals his conviction and sentence, alleging he received ineffective assistance of counsel in the plea process.

Caes's failure to file a motion in arrest of judgment bars a direct challenge to his guilty plea. *See State v. Straw*, 709 N.W.2d 128, 132 (Iowa 2006). But we will consider his challenge through the lens of ineffective assistance of counsel. *See id.* at 133. Our review is de novo. *See State v. Tate*, 710 N.W.2d 237, 239 (Iowa 2006). We often reserve claims of ineffective assistance for postconviction-relief proceedings so counsel can defend against the accusations, but we will decide the claims on direct appeal if the record is adequate. *See id.* at 240. The record here permits us to address Caes's claim on direct appeal.

Caes must show by a preponderance of the evidence (1) his plea counsel failed to perform an essential duty *and* (2) counsel's failure resulted in prejudice. *See Straw*, 709 N.W.2d at 133, 138. To establish a breach of duty, Caes must show counsel's performance fell below the standard of a reasonably competent attorney. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The measure of prejudice is whether there existed a reasonable probability that, but for counsel's omission, Caes would not have pleaded guilty and would have insisted on going to trial. *See Straw*, 709 N.W.2d at 135–36 (discussing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Caes argues his plea "should be found to have not been knowingly and voluntarily made" because he did not understand an "open plea" meant the court could send him to prison. He contends nowhere in the written plea agreement or the plea-hearing discussion was he informed in "plain language" that prison was one of the possible outcomes.

His contention is not borne out by the record. The written agreement explained the State would recommend "concurrent sentencing" and "at a

minimum" that he be screened for placement at a residential correctional facility. The agreement also explained "any period of incarceration" imposed might carry a one-third mandatory minimum. Likewise, the plea-taking court informed Caes his offense was punishable by five years of incarceration. The district court satisfied the requirements of rule 2.8(2)(b), leaving no ground for Caes's attorney to object to the plea colloquy. *See State v. Reynolds*, 670 N.W.2d 405, 411 (Iowa 2003) (holding trial counsel is not ineffective for failing to raise meritless issue).

Caes claims his "yes" or "no" answers to the court's questions indicate he was "doing nothing more than answering by rote" and do not prove he understood his guilty plea could result in a prison sentence. After reviewing the totality of the written plea and the plea colloquy, we have no reason to doubt the veracity or competency of Caes's responses. Caes provides no specifics on how his attorney's explanation of the plea agreement fell short. Caes does not assert counsel advised him that prison was *not* a possible consequence of the "open plea" agreement. In assessing claims of ineffective assistance of counsel, we examine a defendant's conduct as well as that of his attorney. *See State v. Rice*, 543 N.W.2d 884, 888 (Iowa 1996). Caes cannot call foul now. He had the chance to inform the court if he did not understand the consequences of his plea or if counsel truly did not inform him of the potential for imprisonment. But he did not do so. Given the information about potential incarceration contained in the record, Caes is unable to establish counsel breached an essential duty in allowing him to enter a guilty plea.

**AFFIRMED.**