# IN THE COURT OF APPEALS OF IOWA

No. 18-1528
Filed January 9, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MARK ANTHONY EVERETT,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, John D. Ackerman, Judge.

Mark Everett appeals his convictions for first-degree robbery and being a felon in possession of a firearm. **AFFIRMED.**

Matthew R. Metzgar of Rhinehart Law, P.C., Sioux City, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and May and Greer, JJ.

**BOWER, Chief Judge.**

Mark Everett appeals his convictions for first-degree robbery and being a felon in possession of a firearm, arguing the robbery verdict was against the weight of the evidence, trial counsel was ineffective in failing to object to opinion and vouching testimony, and there was insufficient evidence to support the felon in possession conviction. We affirm.

**I. Background Facts and Proceedings.**

On January 5, 2018, at approximately 12:15 a.m., Ry Tyler was working alone at a Kum & Go in Sioux City when a man carrying a silver handgun entered the store. The man demanded the moneybag, and he and Tyler went to the back room of the store. At some point, the intruder made Tyler empty his pockets, taking Tyler's LG flip cell phone and wallet. The intruder held the gun to Tyler's face and said he wasn't afraid to shoot him.

There was no money in the back room, but the robber eventually took cash from both registers in the front of the store. When the robber exited, Tyler called 911 and reviewed the store's surveillance video to provide a description of the man to dispatch. When police arrived, they watched the surveillance video, which had captured the robbery. The robber was wearing a two-toned grey and black hooded coat, a ski mask, two pairs of blue boxer shorts, dark pants with zipper pockets, and boots. Sergeant Thomas Gill commented he appeared to be wearing a helmet under the ski mask or had "dreadlocks."

Later, Tyler viewed the entire video surveillance from the evening of the robbery. He noticed that a man who looked like the robber and wore an identical coat and boots had been in the store twice prior to the robbery—once at around

9:16 p.m. and again around 10:59 p.m. On each earlier visit, the robber was with a different man. At 9:16 p.m., the man with him was about the same height as the robber but was larger in girth and wore an orange sweatshirt. At 10:59 p.m., the other man was shorter, wore well-worn jeans, and had a full beard.

Officer Ryan Moritz, a K-9 handler, responded to the robbery dispatch and began to establish a perimeter around the Kum & Go. His K-9 partner, Dax, appeared to find a scent about a block away from the Kum & Go but lost it. Officer Moritz stopped tracking and returned to the convenience store where he watched the surveillance tape.

About an hour after the 911 call, Officer Moritz and Dax returned to tracking and followed footprints in the snow, eventually following a trail to the northwest corner of 921 15th Street. Dax led Officer Moritz to a cellar door of the residence where a light was on inside. Dax went down some steps to the door and "started lunging and barking at the door," which indicated to Officer Moritz the dog sensed the odor of humans.

Police contacted the owners of the duplexes at 921–923 15th Street and learned the cellar door was part of the 921 residence. Sergeant Thomas Gill knocked on the door of 921. Eventually, a bearded male opened the door and identified himself as Jake Johnson. As he stood at the door, Sergeant Gill could also see a female in the living room, later identified as Mischalet Fenceroy. Sergeant Gill also noticed a two-tone sweatshirt on the floor that resembled the one the robber was wearing in the surveillance video. Officer Michael Sitzman, who stood nearby, also noticed the sweatshirt.

When Sergeant Gill tried to enter the house to secure the evidence, Johnson slammed the door. Sergeant Gill was able to catch the door, however, and entered and placed the sweatshirt on the handle of a vacuum cleaner.

Johnson and Fenceroy told police they were the only people in the house. But two other men eventually came down from upstairs. One man, later identified as Everett, was wearing a T-shirt and boxer shorts; the other man was Malcolm Golden, a larger man who was fully clothed. All four occupants of the house were transported to the police station for interviews, and police obtained a warrant to search the residence.

During the subsequent search, police discovered a broken flip phone in the kitchen garbage and a gun in the upstairs bathroom garbage. The cell phone was later identified by Tyler as the one that was stolen from him. In a bedroom closet off an upstairs bathroom, police discovered a pair of boots that were like those the robber wore and a wad of cash inside a pair of dark, zipper-pocket pants. Police also found a ski mask on top of the refrigerator in the kitchen.

When Everett was booked at the jail, he was wearing two pairs of blue boxers. The surveillance video shows that the robber was wearing two pairs of blue boxers. Detective Nick Thompson interviewed Everett. Everett first denied leaving the residence on the evening of January 4 or early January 5. Later, he stated he left the house once to make a purchase at Kum & Go.

Everett was charged with first-degree robbery and felon in possession of a firearm. At the start of Everett's jury trial in August, the parties stipulated, "The defendant Mark Anthony Everett was previously convicted of a felony on or about September 24, 2013."

Irina Brodsky, a Division of Iowa Criminal Investigations (DCI) identification technician, tested the handgun and magazine for fingerprints; no discernable prints were found. Brodsky also swabbed the handgun magazine for DNA.

DCI criminalist Ryan Petruccelli tested the swabs gathered from the gun and magazine. He obtained a partial DNA profile, which was a mixture from at least two individuals, but it was "too weak for conclusive interpretation." Petruccelli also tested the ski mask for DNA and developed a DNA profile that "indicated a mixture of three individuals." "The profile of the major contributor matched the known DNA profile of Jake Johnson." The other two profiles could neither include nor exclude Everett as a contributor.

Detective Thompson testified the individuals depicted in still photos taken from the Kum & Go surveillance video at 9:16 p.m. were Golden and Everett and those depicted in still photos taken from the video at 10:59 p.m. were Johnson and Everett. Johnson is bearded. Everett had shoulder-length dreadlocks and a goatee.

Fenceroy testified that at one point in the evening of January 4 Everett left the house with Golden and went to Kum & Go. She was shown a still photo from the Kum & Go surveillance tape at 10:59 p.m. and testified the men depicted were Johnson and Everett. Fenceroy testified she was aware of another time Everett left the house alone, and when Everett returned to the 921 residence, he went upstairs. Fenceroy eventually joined him and Everett showed her a "wad" of cash. She testified they were in the bedroom in which the pants and wad of cash were found. Fenceroy stated she had seen Everett with a silver handgun a couple of days before January 5, 2018. Fenceroy also testified that when they were being

transported to the police station, Johnson gave her money to hold and she hid it in her bra. She stated it was not similar to the large wad of money Everett had shown her. Fenceroy testified she told Detective Thompson she remembered hearing the men, including Everett, discussing "hitting a lick" on the evening before the robbery. She explained a "lick" is when you take something from someone.

Everett's counsel argued the evidence did not point to Everett as the perpetrator but rather to Johnson.

The jury found Everett guilty as charged. Everett filed a motion for new trial arguing the verdict was contrary to the weight of the evidence, which was denied by the trial court.

Everett appeals, claiming the verdict is contrary to the weight of the evidence, trial counsel was ineffective during the State's questioning of witnesses, and there is insufficient evidence to support the felon-in-possession conviction.

**II. Scope and Standards of Review.**

"We generally review rulings on motions for new trial asserting a verdict is contrary to the weight of the evidence for an abuse of discretion." *State v. Ary*, 877 N.W.2d 686, 705–06 (Iowa 2016). An abuse of discretion occurs if a district court exercises its discretion on grounds "clearly untenable or to an extent clearly unreasonable." *State v. Wickes*, 910 N.W.2d 554, 564 (Iowa 2018) (citation omitted).

"Because a claim counsel was ineffective implicates the constitutional right to effective assistance of counsel, we review such claims de novo." *Ary*, 877 N.W.2d at 704.

We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Showens*, 845 N.W.2d 436, 439 (Iowa 2014).

> In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. We will uphold a verdict if substantial record evidence supports it.

*Id.* at 439–40 (citation omitted).

**III. Discussion.**

*A. New trial motion.* Everett first argues the robbery conviction is against the weight of the evidence and, consequently, the trial court abused its discretion in denying his motion for new trial.

Everett asserted a defense that Johnson was the perpetrator of the robbery. He points out the discernible DNA on the ski mask was that of Johnson. Everett has a tattoo above and below his eye, which Tyler did not mention. Johnson did not have tattoos on his face. When officers came to the house, the two-toned sweatshirt was in the living room of the residence in Johnson's proximity. It was Johnson who slammed the door on Sergeant Gill as he attempted to enter and secure the residence after seeing the sweatshirt. And Johnson gave money to Fenceroy en route to the police station. Everett also notes his fingerprints were not found on the weapon, and the ski mask did not contain his hair, skin, or saliva.

A verdict is contrary to the weight of the evidence "only when 'a greater amount of credible evidence supports one side of an issue or cause than the other.'" *Ary*, 877 N.W.2d at 706 (citation omitted). Despite the evidence Everett notes, which raises inferences contrary to the verdict, the surveillance video depicts an African-American individual wearing the same outerwear and boots

coming into the Kum & Go on three occasions between the evening of January 4 and the early morning hours of January 5. The first two times, that individual was in the company of other persons witnesses identified as Golden and Johnson. Everett's shoulder-length locks were voluminous and, as Sergeant Gill noted, could appear helmet-like under a ski mask and hood. The robber was wearing two pair of blue boxers. When officers came to the 921 residence, Johnson and Golden were fully dressed. However, Everett was in a t-shirt and boxer shorts. Everett had two pair of blue boxers on when booked into jail. Also, the jury could find that Everett's body build was more similar to the robber's than was Johnson's. Fenceroy testified the person depicted in the surveillance video was Everett. She also testified she had seen him in possession of a handgun similar to the one shown in surveillance video and that Everett had shown her a wad of cash on January 5. Fenceroy testified she was with Everett in the bedroom of the 921 residence when he showed her the money. Officers found the wad of money in the pocket of pants in the closet of that bedroom. The district court denied the motion for new trial, finding the credible evidence did not preponderate heavily against the verdict. We find no abuse of discretion in the trial court's ruling and conclude this is not a case where the evidence preponderates heavily against the verdicts. We affirm the robbery conviction.

*B. Ineffective assistance of counsel.* Everett next asserts trial counsel was ineffective in failing to object when (1) Fenceroy opined Everett was guilty, (2) witnesses testified it was Everett depicted on surveillance video, and (3) the prosecutor's questioning of Fenceroy constituted improper vouching of her credibility.

"To prevail on a claim of ineffective assistance of counsel, the claimant must show counsel failed to perform an essential duty and prejudice resulted. We resolve a claim of ineffective assistance of counsel on direct appeal only when the record is adequate." *Id.* at 704 (citations omitted). In considering a claim of ineffective assistance of counsel, it is not necessary for a reviewing court to determine whether "trial counsel's performance was deficient before examining the prejudice component of [the] ineffective-assistance claim." *State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006).

We do not agree with Everett's characterization of the testimony about which he objects. In any event, Everett's claims of ineffective assistance fail because there is not a reasonable probability that but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *See State v. Harris*, 891 N.W.2d 182, 185–86 (Iowa 2017) ("Prejudice is established if 'there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.'" (citation omitted)). The jury was able to view the surveillance video. They were able to observe Everett's appearance. Fenceroy testified she recognized the person in the still photo was Everett, a person with whom she had a relationship. She testified she recognized the clothing as being his. She testified Everett discussed a "lick," and showed her a wad of money. She also had seen him with a silver gun before the robbery. Other evidence showed the robber wore two pairs of blue boxers, a two-toned sweatshirt, boots, and dark pants when he entered the store prior to the robbery. Everett had on two pair of blue boxers when booked. This evidence weighs heavily in support of the jury's verdict.

***C. Sufficiency of evidence of felon in possession.*** Finally, Everett argues there is not sufficient evidence to establish he was a felon in possession as the jury was instructed. With regard to the felon-in-possession-of-a-firearm instruction, the jury was told the State must prove both: "(1) On or about January 5, 2018, in Woodbury County, Iowa, the defendant knowingly possessed a firearm[,] and (2) The defendant was previously convicted on September 24, 2013, of a felony in case #12-0-195." The stipulation provides substantial evidence Everett had previously been convicted of a felony and there is substantial evidence he was the perpetrator of the robbery during which he was in possession of a firearm. There is substantial evidence supporting the conviction.

Everett contends the State failed to prove it was he who was adjudicated in case #12-0-195 and, therefore, there is insufficient evidence to convict him as the jury was instructed. Beyond the lack of objection on this claim, we conclude the case number language in the jury instruction was mere surplusage. *Cf. State v. Maxwell*, 743 N.W.2d 185, 197 (Iowa 2008) ("When the submission of a superfluous jury instruction does not give rise to a reasonable probability the outcome of the proceeding would have been different had counsel not erred, in the context of an ineffective-assistance-of-counsel claim, no prejudice results."). Because substantial evidence supports the conviction, we affirm.

**AFFIRMED.**