# IN THE COURT OF APPEALS OF IOWA

No. 19-1743
Filed February 3, 2021

**RALONDO D. NELSON,**
　　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　　Respondent-Appellee.
_____

　　　　Appeal from the Iowa District Court for Scott County, Mary E. Howes, Judge.

　　　　Ralondo Nelson appeals from denial of his requests for postconviction relief in four underlying criminal cases. **AFFIRMED.**

　　　　Nate Nieman, Rock Island, Illinois, for appellant.

　　　　Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

　　　　Considered by Bower, C.J., and May and Ahlers, JJ.

**AHLERS, Judge.**

Ralondo Nelson seeks postconviction relief (PCR) from convictions entered in four criminal cases. He claims his attorneys in the criminal cases provided ineffective assistance of counsel. After a PCR trial, the district court rejected Nelson's claims. We reject them as well and affirm the district court.

## I.    The Underlying Criminal Cases

As noted, there are four underlying criminal cases at issue in this appeal.

### A.    Case Number FECR333525

In this case, Nelson was charged with possession of an offensive weapon. The case went to trial, Nelson was convicted of the offense, and the conviction was affirmed on appeal. *State v. Nelson*, No. 11-1670, 2013 WL 104796, at *3 (Iowa Ct. App. Jan. 9, 2013). Nelson claims his trial counsel was ineffective by failing to use prior inconsistent statements to impeach a witness who connected Nelson to the firearm.

### B.    Case Number FECR339758

Nelson was charged with robbery in the first degree. Pursuant to plea agreement, Nelson pleaded guilty to and was convicted of the reduced charge of robbery in the second degree. He claims his trial counsel was ineffective for failing to take steps to suppress an unconstitutionally suggestive line-up procedure and failing to properly investigate Nelson's claimed alibi.

### C.    Case Number FECR340382

Nelson was charged with willful injury and two counts of assault while displaying or using a weapon. Pursuant to plea agreement, Nelson pleaded guilty to and was convicted of the willful-injury charge. The other two charges were

dismissed. Nelson claims his trial counsel was ineffective by failing to properly investigate whether Nelson accidentally cut the victim of the crime with a knife.

### D. Case Number FECR341512

In this case, Nelson was charged with robbery in the first degree, forgery, willful injury causing bodily injury, and assault while displaying or using a weapon. Pursuant to plea agreement, he pleaded guilty to and was convicted of robbery in the first degree and forgery. The other two charges were dismissed. He now claims trial counsel was ineffective for failing to properly investigate in support of a defense and rushed Nelson into pleading guilty before a full investigation could be completed.

## II. Standard of Review

"Generally, an appeal from a denial of an application for postconviction relief is reviewed for correction of errors at law." *Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016) (citations omitted). However, because ineffective-assistance-of-counsel claims are based on the constitutional guarantees of the effective assistance of counsel found in the Sixth Amendment of the United States Constitution and article I, section 10 of the Iowa Constitution, such claims are reviewed de novo. *Id.* As noted, all Nelson's claims are based on ineffective assistance of counsel. Therefore, our review is de novo.

## III. General PCR Principles

To establish a claim of ineffective assistance of counsel, the applicant must establish (1) trial counsel failed to perform an essential duty, and (2) the failure resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We "may consider either the prejudice prong or breach of duty first, and failure to find

either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (quoting *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015)). In analyzing ineffective-assistance-of-counsel claims, we are not required to determine whether counsel's performance was deficient before examining the prejudice component of the claim. *State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006). "Improvident trial strategy, miscalculated tactics, or mistakes in judgment do not necessarily amount to ineffective assistance of counsel. The petitioner must overcome a strong presumption of counsel's competence, and a postconviction applicant has the burden to prove by a preponderance of the evidence that counsel was ineffective." *Osborn v. State*, 573 N.W.2d 917, 922 (Iowa 1998) (internal citation omitted)).

## IV. Application of Principles

In discussing the merits of Nelson's claims, we will separate them between cases in which he went to trial and cases in which he pleaded guilty, as they involve somewhat different principles.

### A. Counsel's Performance at Trial (Case Number FECR333525)

On direct appeal from his conviction in the underlying criminal case, our court noted the following facts:

> [The witness] was sitting outside her Davenport home when five of her son's acquaintances, including Nelson, walked up to the house. Nelson asked [the witness's] son to step off the porch. When he did not, Nelson lifted his shirt and revealed the butt of a gun. [The witness] told Nelson to leave and immediately reported the incident to police.
> A Davenport police officer dispatched to the scene saw Nelson emerging from an alley. Upon searching the alley, the officer found a sawed-off rifle.
> . . . [The witness] identified Nelson as the person who displayed a weapon. When questioned about her inconsistent stories during the first trial, she intimated that she initially lied

because Nelson's cohorts threatened her family's safety if she identified Nelson.

*Nelson*, 2013 WL 104796, at *1.

In this PCR action, Nelson focuses on his counsel's failure to exploit claimed inconsistencies in the witness's description of the gun. When she first reported the incident, she described the gun as silver and black. At trial, she described Nelson flashing a butt of the gun at her and it was brown. The gun recovered in the alley was a sawed-off rifle with a black barrel and a brown stock and forestock. Nelson's attorney did not impeach the witness's trial testimony that she saw a brown butt of a gun with her previous statement in which she described the gun as silver and black. Nelson claims this missed opportunity for impeachment was critical due to the fact the case against him involved a claim of constructive possession of the sawed-off rifle,[1] so attacking the credibility of the witness with a prior inconsistent statement was critical, as she was the only witness to place a gun in Nelson's possession.

We need not decide whether Nelson's trial counsel breached a duty of effective representation by failing to impeach the witness with a prior inconsistent

---

[1] In its brief, the State asserts it is not necessary to tie Nelson to the sawed-off rifle in the alley and the State was only required to prove Nelson was in possession of any firearm. We reject this argument. The charge against Nelson was possession of an offensive weapon, not carrying weapons, felon in possession of a firearm, or some other charge in which any firearm would do. *See, e.g.*, Iowa Code § 724.4 (2011) (defining the offense of "carrying weapons" to include going "armed with . . . any loaded firearm of any kind" within city limits). Given the nature of the charge, the State was required to prove possession of an offensive weapon (e.g., a sawed-off rifle). *See id.* § 724.1(2) (defining offensive weapon to include a rifle with a barrel of less than sixteen inches in length). The only firearm that met the definition of an offensive weapon of which there was record evidence was the sawed-off rifle in the alley. Therefore, the State's case required the State to prove Nelson possessed the rifle found in the alley.

statement, as Nelson failed to meet the prejudice prong of the ineffective-assistance-of-counsel claim. *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) ("If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently."). Here, the witness described Nelson as having flashed a gun at her in an apparent effort to intimidate her or her son. After she threatened to call the police, Nelson and his cohorts left and were soon located a short distance away. An officer in a marked patrol car looking for the group of young men came across them sitting on the wall alongside the parking lot of a gas station. He identified Nelson as one of the group. By the time the officer drove around part of the block to approach the group from the alley, Nelson had left the group and was found coming from between garages that opened into the alley. A subsequent sweep of the area revealed the sawed-off rifle tucked under a piece of lumber beside the garage where Nelson was observed when the officer approached in the alley. Nelson later claimed he went between the garages to urinate. However, the officer who searched the area between the garages observed no indications of wet grass, wet ground, or any other indication that someone recently urinated in the area.

Based on these circumstances, our confidence in the outcome is not undermined by Nelson's counsel's failure to impeach the witness with her somewhat conflicting versions of the color of Nelson's gun. *See State v. Harris*, 891 N.W.2d 182, 188–89 (Iowa 2017) (noting that, in determining whether there is prejudice, we assess probability of a different result, which involves considering whether our confidence in the outcome is undermined by the effects of counsel's errors). Besides the fact the gun was partially black, as the witness initially

described, we note Nelson's actions overcome any likely benefit that could have been attained by parsing the witness's description of the color of the gun. Nelson was aware the police had been called. When a police car passed him shortly thereafter, Nelson left a semi-public area and was found coming from between two garages of residences to which Nelson had no apparent connection. The gun in question was found exactly where Nelson had been spotted, and it was stashed in a short pile of lumber, which is not exactly a typical storage place for a gun. Furthermore, Nelson gave an excuse for being in the area that made no sense. There was no evidence of urination in the area between the garages. Even if Nelson needed to urinate, it made no sense for him to leave the gas station, which was open to the public with a functioning bathroom, to go onto a stranger's private property in order to do so. Nelson's actions are consistent with the State's theory, which is Nelson flashed a gun, fled under threat of the police being called, immediately went to stash the gun as soon as he realized he had been spotted by police, was caught as he left the location where he stashed the gun, and gave an implausible story to explain his actions. We find there is no reasonable probability the jury would have reached a different verdict if Nelson's counsel had effectively impeached the witness with her partially inconsistent descriptions of the color of the gun. Therefore, Nelson has not established prejudice, and his claim of ineffective assistance of counsel in this case fails.

### B. Counsel's Performance in Cases Involving Guilty Pleas

In the remaining three cases, Nelson entered guilty pleas pursuant to a global plea agreement that greatly reduced his maximum exposure to incarceration. He now claims both attorneys representing him in the three cases

were ineffective.[2]   In order to satisfy the prejudice prong on his ineffective-assistance-of-counsel claim, Nelson is required to "show 'there is a reasonable probability that, but for counsel's errors, he . . . would not have pleaded guilty and would have insisted on going to trial.'"  *State v. Weitzel*, 905 N.W.2d 397, 402 (Iowa 2017) (quoting *State v. Straw*, 709 N.W.2d 128, 138 (Iowa 2006)).

### 1.    The Car Wash Robbery (Case Number FECR339758)

In this case, Nelson and a cohort approached a patron of a car wash.  The cohort stood lookout while Nelson robbed the patron at knifepoint.  The patron later identified Nelson from a series of six-pack photo lineups.  Nelson pleaded guilty to an amended charge of robbery in the second degree.  He now claims his attorney was ineffective for failing to suppress the identification of him based on claimed suggestiveness of the lineup process.   He also claims his attorney did not adequately develop his alibi defense.

With respect to the failure to challenge the identification of Nelson through use of a photo lineup, we begin with the law on this subject.  Regarding challenges to out-of-court identifications based on lineups that are claimed to be impermissibly suggestive, we apply a "long-standing, two-part analysis" as follows:

> "First, we decide whether the procedure used for the identification was impermissibly suggestive."  If we determine the procedure was impermissibly suggestive, we turn to the second step to decide whether "under the totality of [the] circumstances the suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification."
>     Under the second step, the critical question is whether the out-of-court identification was reliable.  We have endorsed the prevailing five-factor test for assessing reliability of out-of-court identification

---

[2] One attorney represented Nelson in case number FECR339758.  A different attorney represented him on case numbers FECR340382 and FECR341512.  Both attorneys were present during the plea negotiations resolving all three cases.

procedures adopted from [*Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)]:

> (1) the opportunity of the witness to view the perpetrator at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the perpetrator, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

*State v. Booth-Harris*, 942 N.W.2d 562, 570 (Iowa 2020) (quoting *State v. Taft*, 506 N.W.2d 757, 762–63 (Iowa 1993)) (alteration in original).

Nelson claims the lineup procedure was impermissibly suggestive because, in his view, of the twelve photos shown to the car wash patron across two six-pack lineups, only two of the individuals had "Mohawk" haircuts.[3] While reasonable minds could differ on how many of the persons depicted in the photo array, if any, had Mohawk haircuts, we need not decide whether the lineup was impermissibly suggestive because, even if it was, Nelson cannot satisfy the second step of the analysis—lack of reliability.

Looking at the factors for reliability from *Biggers*, 409 U.S. at 199–200, the car wash patron got a good look at the person who did all the talking, brandished the knife, and demanded his money. The patron's attention was focused on the person wielding the knife, as the patron told police he was confident he would be able to identify the person who robbed him but would not be able to identify the cohort serving as lookout. The patron also gave what turned out to be an accurate description of the robber in terms of age, race, build, skin complexion, and hairstyle. In terms of confidence, the patron immediately and confidently picked

---

[3] The patron had reported the robber had a "Mohawk" style haircut.

Nelson out of the lineup as soon as it was shown to him. Finally, the identification occurred within four days after the robbery.

As noted, with regard to the second step of the analysis regarding reliability, we consider the totality of the circumstances. *See Booth-Harris*, 942 N.W.2d at 570. In considering the totality of the circumstances, we note some important and unique details. On the night of the robbery, upon scouring the area near the robbery for the reported suspects, police found and apprehended two individuals nearby who met the description of the two young men involved in the robbery, including one who had a Mohawk haircut. The car wash patron was brought to the scene where the two individuals had been apprehended to identify them. As the State asserts, this "in the field" lineup procedure immediately following the robbery was inherently more suggestive than the six-pack photo array process used later. In spite of the more suggestive nature of this "in the field" lineup, the patron informed law enforcement that those two individuals were not the two involved in the robbery. In stark contrast during the photo lineup, the patron rejected everyone in the first six-pack of photos as having been the robber and then immediately picked out Nelson from the second six-pack. This sequence of events helps corroborate the fact the patron got a good look at the robber, was confident in his identification, and was not persuaded to give an unreliable identification based on the robber's haircut.

Based on the totality of the circumstances and the five-factor test for assessing reliability, we do not believe there was a substantial likelihood of irreparable misidentification. Therefore, had Nelson's counsel filed a motion to suppress the patron's identification of him, it would not have been successful. As

a result, Nelson failed to meet his burden of establishing counsel breached the duty of competent representation owed to Nelson by failing to seek suppression of the identification. *See State v. Carroll*, 767 N.W.2d 638, 645 (Iowa 2009) (holding defense counsel has no duty to pursue a meritless issue).

As to Nelson's claim defense counsel was ineffective for failing to fully investigate his alibi defense, we need not decide whether counsel breached her duty, as Nelson failed to meet his burden on the prejudice prong. *See State v. Russell*, 897 N.W.2d 717, 730 (Iowa 2017) (holding it is the applicant's burden to show ineffective assistance of counsel by a preponderance of the evidence). Other than his own self-serving testimony, Nelson presented no evidence at the PCR trial that established an alibi for the offense to which Nelson pleaded guilty. Having presented no alibi witnesses or alibi evidence at the PCR trial, Nelson failed to meet his burden of showing the reasonable probability of a different outcome if he had gone to trial. *See Harris*, 891 N.W.2d at 188. Furthermore, the evidence at the PCR trial established Nelson admitted to defense counsel that he committed the robbery. Having committed the robbery, there was no reasonable probability defense counsel would have been able to find and present witnesses at trial establishing Nelson was elsewhere when the robbery was committed even if counsel had more thoroughly investigated the alibi angle.

### 2. The Willful Injury Charge (Case Number FECR340382)

Nelson pleaded guilty to the charge of willful injury based on stabbing a female acquaintance with a knife. He claims counsel was ineffective for failing to investigate whether the stabbing was accidental. To support his claim the stabbing was accidental, Nelson relies heavily on a couple of sentences cherry-picked from

a police report in which the victim said she thought Nelson was joking. However, Nelson's claim ignores the rest of the report, which stated the victim initially thought he was joking but then, when she realized he was not, she tried to flee Nelson's presence and barricade herself in a room. Nelson chased after her, forced his way into the room, and stabbed the victim three times. Given these facts, we find no breach of duty by defense counsel for failing to further investigate a defense that the stabbings were accidental. Furthermore, given the fact Nelson pleaded guilty in this case as part of a global plea agreement that resulted in significant reduction or dismissal of charges, thus greatly reducing his potential incarceration exposure, Nelson has not met his burden of establishing he would have passed on the plea offer and insisted on going to trial. Nelson's ineffective-assistance-of-counsel claim in this case is without merit.

### 3. The Date Robbery (Case Number FECR341512)

A man responding to a newspaper advertisement for a romantic date made arrangements to meet the person posting the ad. The "date" turned out to be a close acquaintance and possible girlfriend of Nelson's. When the man arrived for the date, Nelson's acquaintance got into the man's car, and then Nelson quickly entered the car through the back passenger door. Nelson held a knife to the man's throat and demanded money. Nelson took the man's wallet, pager, and keys before exiting the car. The man drove himself to the hospital for treatment of a slash wound on his neck and a collapsed lung due to a puncture wound. Nelson's acquaintance gave a statement supporting the above-stated facts.

As part of a global settlement agreement resolving the three cases addressed in this opinion, as well as two juvenile robbery cases, Nelson pleaded

guilty to robbery in the first degree and forgery related to use of the robbed man's debit card. Nelson claims his counsel was ineffective for failing to properly investigate in support of a defense and rushing Nelson into pleading guilty before a full investigation could be completed.

Nelson's argument ignores the important detail that his palm print was found on the back passenger window of the victim's car, thus corroborating the statement of Nelson's accomplice. Given this very damning fact, we find no reasonable possibility that Nelson would have passed on the favorable global plea offer and insisted on going to trial. *See Weitzel*, 905 N.W.2d at 402 (stating the standard for satisfying the prejudice prong of an ineffective-assistance-of-counsel claim when the accused pleads guilty).

As to Nelson's claim that he was rushed into accepting the guilty plea, we find no merit in this claim. To be sure, this case had not been on file very long before Nelson accepted the plea offer. There were time constraints placed on Nelson to accept or reject the global plea offer, as case number FECR333525 was set to go to trial a business day or two after the date on which Nelson accepted the deal. These tight deadlines should be expected in negotiations for a global plea agreement involving several cases on varying timelines. The evidence we find convincing based on our de novo review is that plea negotiations had been ongoing for at least a few days before Nelson was called upon to make a final decision. The attorneys spent hours going over the cases and the plea offers with Nelson before Nelson was asked to decide. Nelson was permitted to have his grandfather come into the room to discuss the plea offer. After hours of discussion and advice from family and counsel, Nelson chose to accept the global plea offer

that resulted in knocking literally decades off his potential incarceration time. The record of the plea hearing shows no hesitation or confusion on Nelson's part. We find no convincing evidence that establishes any reasonable possibility Nelson would have rejected the favorable global plea offer and insisted on going to trial. *See id.*

## V. Conclusion

For the reasons stated, no error was committed by the district court in rejecting Nelson's claims his counsel was ineffective by failing to cross-examine a witness in one case and by failing to pursue suppression issues or conduct an investigation before he pleaded guilty in three other cases. Therefore, we affirm.

**AFFIRMED.**