# IN THE COURT OF APPEALS OF IOWA

No. 23-1635
Filed September 4, 2024

**RUSSELL ALAN LARSON,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Buchanan County, John J. Sullivan,

Judge.

        The applicant appeals the denial of his application for postconviction relief.

**AFFIRMED.**

        Webb L. Wassmer of Wassmer Law Office, PLC, Marion, for appellant.

        Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney

General, for appellee State.

        Considered by Greer, P.J., and Ahlers and Badding, JJ.

**GREER, Presiding Judge.**

After a 2021 bench trial where Russell Larson was convicted of two counts of sexual abuse in the second degree and after his direct appeal was denied, he applied for postconviction relief (PCR). *See generally State v. Larson,* No. 21-0633, 2022 WL 951155 (Iowa Ct. App. Mar. 30, 2022) (confirming the convictions and rejecting the argument that his confession was not sufficiently corroborated by the child's testimony). The district court denied his PCR application, and Larson appeals from that decision. He contends we should find he received ineffective assistance from trial counsel because counsel (1) did not adequately communicate with him, (2) allowed him to waive his right to a jury trial and waive his right to testify without the waivers being knowing, (3) failed to review the video of the police interrogation with him, (4) failed to present medical evidence that would have aided his defense related to his genitalia, and (5) did not adequately prepare and conduct a proper cross-examination of the child victim.

After analyzing these claims, we agree with the district court and affirm the denial of the PCR application.

**Facts and Procedural Background.**

When Larson admitted to law enforcement that he sexually abused a young child between March 1 and July 1, 2020, he was charged with two counts of sexual abuse under Iowa Code sections 702.17(3), 709.1(3), and 709.3(1)(b) (2020). Larson waived in writing his right to a jury trial in November 2020, and the district court conducted a hearing with Larson explaining the ramifications of that waiver and received Larson's consent. After a February 2021 bench trial, the district court found Larson guilty on both counts. Larson did not testify; after the State rested

its case but before Larson's case-in-chief, the district court engaged Larson and conducted a colloquy on his decision to not testify at the trial. After sentencing,[1] Larson appealed and on March 30, 2022, a panel of our court affirmed the convictions. *See id.* at *2. After a September 2023 PCR hearing, with testimony from Larson and his trial counsel, the district court denied the PCR application. The court found that trial counsel's representation did not fall below an objective standard of reasonableness, but that even if it had, the evidence of Larson's guilt was so overwhelming that any error committed by trial counsel did not result in prejudice that affected the outcome of the case.

Larson appeals from that ruling. We tackle each allegation of ineffective assistance separately.

**Standard of Review.**

The review of a denial of a PCR application is generally for errors at law, but if constitutional infirmities are raised, review is de novo. *See Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021).

**Analysis.**

We start with the basic pillars of an ineffective assistance of counsel claim. A defendant must typically show that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Concerning the first prong of the test, "counsel's performance is measured against the standard of a reasonably competent practitioner, with the presumption that the attorney performed his duties in a competent manner." *State v. Keller,* 760 N.W.2d

---

[1] In May 2021, Larson was sentenced to a 25-year prison term for each count, running concurrently along with other consequences.

451, 452 (Iowa 2009). A "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. To establish the prejudice prong, the defendant is required to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

*Communication with Trial Counsel.*

On this first theory, the PCR hearing testimony over the communication between trial counsel and Larson conflicted. Trial counsel testified he met with Larson many times at the jail and spoke with him by phone at least every other day, if not daily. Larson testified that trial counsel only visited him "maybe five" times when he was jailed. More to the point, Larson contended that trial counsel never came to the jail to prepare him for trial. He summed it up saying "[counsel] just doesn't want to listen to me." But we take that as different than simply not communicating because Larson noted that "everything I brought up [counsel] says the judge would deny." That statement goes to pre-trial strategy influenced by what the court might consider based upon the likely proof at trial. *Id.* at 691 (noting that the reasonableness of counsel's decisions is influenced by the defendant's own statements and actions). Plus, trial counsel testified to his communications with Larson. Trial counsel advised Larson his case was difficult given Larson's admissions in the interview with the deputy. As his standard practice, trial counsel also discussed with Larson "the process of trial, the strengths, weaknesses as you asked, the downside of that interview that he provided." According to trial counsel,

before trial, the two also addressed Larson's rights, such as whether to ask for a jury trial and the overall trial strategy, including the choice to testify.

After hearing the evidence, the PCR court found that trial counsel sufficiently communicated with Larson, crediting the testimony of trial counsel. We find nothing in the record to dispute this finding and agree that there is no basis to find counsel provided ineffective assistance of counsel.

*Voluntary Waiver of Jury Trial and Right to Testify.*

As a hurdle to this issue, we first note that Larson filed a written waiver of his right to a jury trial. At a hearing on the issue, the district court had a lengthy discussion with Larson as to his rights and voluntary choice to waive a jury trial. Yet, Larson told the PCR court that he wanted a jury trial and did not get one, claiming his trial counsel urged him to waive it because it would "speed it up." At the PCR trial, Larson's trial counsel disputed that he made the decision to waive the jury trial and instead strongly noted that "I would not have made that decision on it being a bench or jury trial for him. That's not how I conduct my practice." We have no basis to question the voluntariness of the jury trial waiver on this record and, thus, have no reason to grant relief on the claim of ineffective assistance of trial counsel. *See State v. Liddell,* 672 N.W.2d 805, 811 (Iowa 2003) (holding a defendant has the burden to show the waiver was not knowing, voluntary and intelligent).

Like our conclusion on the jury-trial waiver, there is no credible evidence to support Larson's claim that he was provided ineffective assistance regarding his voluntary waiver of his right to testify at the underlying criminal trial. At the PCR trial, Larson testified that he had wanted to tell his story. But, as with the waiver of

jury trial, Larson had an on-the-record discussion with the district court over his decision not to testify. Trial counsel noted counsel's obligation was to advise Larson as to his options and what might happen based upon a particular decision, but that the decision was made by Larson. Additionally, trial counsel explained that Larson made admissions to him about his role in the sexual abuse of the child and, ethically, he could not put Larson on the stand to say anything different than the admissions already made to counsel and to the deputy. Trial counsel offered to withdraw, but Larson did not take trial counsel's offer and proceeded to trial. And in the end, the district court confirmed Larson's voluntary decision not to testify. *See State v. Reynolds*, 670 N.W.2d 405, 411 (Iowa 2003) (finding that while trial strategy plays a large role in the decision to testify, a defendant can waive the right to do so if it is done voluntarily, knowingly, and intelligently).

Thus, we find no basis for these ineffective-assistance-of-counsel claims involving the waiver of Larson's right to a jury trial or his right to testify.

*Access to Information Contained in the Interrogation Video.*

First, we note that at the PCR trial, Larson denied ever seeing the video of the deputy's interview of him and did not remember it being played at trial. Second, Larson could not recall anything he said during that investigatory interview. But he admitted to having the law enforcement reports and confirmed he made and gave his notes about those reports to his trial counsel, which would have contained details about Larson's admissions in the interview.

Trial counsel admitted he did not play the interview for Larson but contended he discussed it with Larson "at length" on more than one occasion because Larson had "made admissions to every count he faced with almost

element by element" detail. Based on their discussions and the fact that Larson participated in the interview with the deputy, Larson was aware of what the interview video would show. Other than some arguments that discussion of the interview was a poor substitute for reviewing it, Larson identifies no specifics from that interview to show how viewing the video would have given him information that would have changed the result or specifically how he was prejudiced in any particular detail. *See Dunbar v. State,* 515 N.W.2d 12, 15 (Iowa 1994) (holding the PCR applicant must state the specific ways in which counsel's performance was inadequate and show how adequate representation would have affected the outcome).

Thus, we can find no prejudice to Larson as he failed to identify how handling the video discussion would have changed the outcome.

*Use of Medical Evidence at Trial.*

Larson claims his trial counsel failed to use what he believed was relevant and helpful evidence at the underlying trial—his medical condition involving his inability to use his male genitalia. At the PCR hearing, trial counsel had no concrete memory of this information other than some vague discussion, but he did remember that often Larson would complain to him about his hemorrhoid problems. So, to address the failure to present evidence of his "male parts" not working, Larson testified at the PCR hearing as follows:

> Q. Okay. Now, also in your amended petition there is an allegation regarding that you had some medical injuries to you that you had sustained that had injured some of your male parts. Did you—do you have a medical issue related to your male parts? A. I do now, yes. I don't have one.
> Q. Prior to that were you involved in a vehicle accident? A. Yes. 2006 in a semi accident. The steering wheel had hit me

where it should not have, and it did lot of damage that caused me a divorce, and now I don't have one at all.

Larson surmised that the evidence would have rebutted the theory that "I was going to do something with [the child]" but that the child sitting on his lap "didn't do nothing for me."  But this PCR testimony conflicted with the statements Larson made at his interview with the deputy where Larson gave these specific details:

> Larson explained "what started it" was the child jumping on his lap. He explained, "she moves around and stuff, and—we—you know she's rubbing it and everything, and she touched it, you know, through my clothes."  Larson stated it started in late spring and only happened a few times.  He elaborated the child touched his penis, and he became aroused.
>
> Upon further questioning, Larson agreed he also touched the child: "I touched her lightly, you know, rubbing her chest and her back—and, down below."  The deputy asked whether Larson was referring to the child's vagina, and Larson agreed that he was. Throughout the interview, Larson made various statements confirming that he rubbed the child's genitals under her clothing. Larson explained the touching occurred in the living room, and the child saw him in the bathroom naked on one occasion.  He later stated the first time it happened, the child saw him in the shower, after which the child sat on his lap in the living room and "wiggled around."  Thereafter, the touching progressed to the child touching his penis with her hand.  When asked what the child refers to a penis as, Larson answered, "She said something about dog tail."  Larson then recounted that, one time when he was shaving, "she washed it" "with soap and a washcloth."

*Larson,* 2022 WL 951155, at *1.  Now on appeal, Larson argues that he did not have a penis for the child to have washed.  But at the PCR trial, Larson provided no evidence of any medical condition regarding his genitalia.  As a practical matter, in the interview with the deputy, Larson described sexual abuse that specifically involved contact with his penis, supporting the elements of the crimes charged that require proof of sexual contact between the genitalia and the child's hand.  So, trial

counsel's failure to raise this vague and unsubstantiated medical condition would not have changed the outcome of the case.

Instead, trial counsel did not delve into this medical theory at the bench trial as it would diminish Larson's credibility. We will not second guess counsel's presentation of the case and say this was an unreasonable strategic decision. *See State v. Wilkens*, 346 N.W.2d 16, 18 (Iowa 1984) (refusing to interfere simply because the reasonable strategic decision did not achieve the result sought).

Even if trial counsel erred by avoiding this conflict in the evidence, Larson fails to convince us that it would have changed the outcome of the case, given the admissions Larson made in the interview with the deputy that specifically addressed sexual abuse involving his penis. "Even if a defendant shows that particular errors of counsel were unreasonable . . . , the defendant must show that they actually had an adverse effect on the defense." *Strickland,* 466 U.S. at 693. Here, Larson's ineffective-assistance claim fails as he has not established his counsel performed below a reasonably competent standard and, in this context, did not prove that but for counsel's error, the result of the trial would have been different. *See State v. Brown*, 930 N.W.2d 840, 855 (Iowa 2019) ("Counsel is not burdened with the duty to raise an issue that has no merit.").

*Preparation and Cross-Examination of Child Witness.*

Larson's final theory is two-fold. First, he argues that when he tried to share information refuting a witness's testimony, his trial counsel did not listen. And second, he argues that trial counsel's cross-examination of the child victim was sub-standard.

On the lack-of-preparation allegation, Larson provided no examples of what information he had, how trial counsel could have used it, and how it would have impacted the outcome. Conclusory claims of prejudice are not sufficient to satisfy the prejudice prong in an ineffective assistance of counsel claim. *See State v. Tate*, 710 N.W.2d 237, 241 (Iowa 2006).

As for Larson's contentions involving the cross-examination of the child victim, trial counsel described the child's trial testimony as "a respectful job of sticking to [the child's] story." Noting that attacking a child victim typically does not yield benefits, trial counsel made a strategic decision not to aggressively cross-examine the child, as he found no place in her testimony where he could "beneficially attack" the child. "An attorney's decision regarding strategy or tactics does not ordinarily provide an adequate basis for a claim of ineffective assistance of counsel." *State v. Newman,* 326 N.W.2d 788, 795 (Iowa 1982). Because this claim goes to trial strategy and Larson, again, offers no specifics as to how a different cross-examination would have led to a different outcome, this theory also fails.

**Conclusion.**

Based upon the analysis above, we affirm the district court's denial of Larson's PCR application, as he failed to establish his trial counsel performed below the standard demanded of a reasonable competent attorney and that he suffered prejudice.

**AFFIRMED.**